Fred Degelau, Administrator, Appellant, v. Wight & Landon.

**Motion to Direct Verdict:** DEMURS TO TESTIMONY. A motion by defendants, at the close of plaintiff's testimony, to direct a verdict in their favor, amounts to an admission of all matters which the testimony tends to prove.

**Malpractice of Physician:** NEGLIGENCE: *Jury question.* Plaintiff's wife gave birth to a child, and during seven months succeeding was troubled with intermittent pains. Defendant physicians were consulted, and performed an operation to remove the afterbirth. There was evidence that no part of the afterbirth could have remained for seven months, and that there was no necessity for this specific operation. A post mortem examination showed that the uterus was torn, and the condition thereof was sufficient to cause death directly, or from the resulting shock. It was shown that such a tear could have been discovered by the operator, and what would be the proper course then to pursue. None of the witnesses said that no other cause of death existed. *Held,* sufficient evidence on which to submit the question of defendant's negligence to the jury.

*Appeal from Chickasaw District Court.*—Hon. L. E. Fellows, Judge

Wednesday, May 15, 1901.

DEFENDANTS are physicians and surgeons practicing their profession as co-partners. This action is brought to recover damages for the negligent and unskillful treatment by them of the plaintiff's wife, whose death, it is alleged, was caused thereby. At the close of plaintiff's case the court sustained a motion to direct a verdict for defendants. Such a verdict was returned, and from the judgment rendered thereon plaintiff appeals.—*Reversed*.

*Sager & Sweet* for appellant.

*Springer & Clary* for appellees.

WATERMAN, J.—Frieda Degelau, the intestate, was the wife of plaintiff. In March, 1898, she consulted defendants professionally, and, on their advice, submitted to the operation of curettage of the uterus, which we understand to be the scraping of the membrane of that organ with an instrument called a "curette," in order to remove cysts, granulations, or foreign matter. The operation was performed by the two defendants, and very shortly after it the patient died. The grounds of the motion for a verdict were that there was no evidence tending to show that defendants were negligent in doing any act performed, or failing to do any act which the law required of them. The testimony introduced on plaintiff's behalf therefore demands our attention. In considering this, it must be borne in mind that plaintiff is entitled to the most favorable construction which the facts will bear. The making of such a motion by defendants amounted to an admission of all matters which the testimony tended to prove. *Meadows v. Insurance Co.*, 67 Iowa, 57.

Plaintiff's wife, who was 21 years of age when she died, gave birth to a child on August 12, 1897, and as a consequence was confined to her bed for a period of one or two weeks; the witnesses differing in their statements as to the time. When she rose from her bed she resumed her household duties, which were such as

usually fall to the lot of a farmer's wife; her husband being engaged in that occupation. She was troubled after this with intermittent pains, as the witnesses say, "in the lower part of the body." She continued, however, to do house-work and care for her child down to the time of the opera-tion. On the twenty-third and twenty-fourth of January, 1898, but little more than a month preceding the operation, she was in good spirits, and danced at two neighborhood gatherings. The day before the operation, as her husband testifies, "she ate and did her work in the house, carried the victuals on the table, and washed the dishes." About Feb-ruary 22d the decedent first consulted the defendants. They gave her medicine, and, after an examination, recommended the operation which was afterwards performed. They told one witness her trouble was "something with the afterbirth of the child." This is the way the witness states it. After some hesitation on the part of decedent, and an assurance by defendants that there was no danger, decedent consented to submit to it. On March 2, 1898, both defendants came to the house where the patient was stopping, and after ad-ministering an anæsthetic the operation was performed. About one hour and a half was consumed in the work, which was finished at 10:30 A. M.; both physicians leaving about a half hour later, the patient then not having fully recovered consciousness. During the day the patient became worse, suffered severe pain, and died at 10 o'clock in the evening of the same day. There was evidence tending to show that it was not probable that any part of the afterbirth could have remained in the womb from August 12th to the second day of March following. There was also evidence going to show that no necessity existed for the operation of curettage; that is, there was testimony from which a jury might have been justified in drawing that inference. At a post mortem examination the uterus was removed, and it was found to be torn to the extent of an inch or an inch and a half, so that the handle of a scalpel was passed through the hole. The membrane also gave evidence of having been scraped, there

being three deep furrows about an eighth of an inch apart. As one physician said, "They looked like marks made by a plow." The condition described was said to be sufficient to cause death, either directly or from the resulting shock. . It also appeared that a tear like this made in curetting the uterus could have been discovered by the operator, and that a proper course, on its being known, would either be to sew it up, or give medicine to sustain the patient until the shock was over, and then permit nature to repair the wound. It is true that none but the organs of the abdominal cavity were inspected at the autopsy, and none of the physicians examined as witnesses attempted to say that no other cause of death existed. But this affected only the weight of their testimony. They did find a cause which could have produced death, and plaintiff is entitled to the most favorable inference from the fact on this hearing. See *State v. Porter,* 34 Iowa, 131. In *Brownfield v. Railway Co.,* 107 Iowa, 254, which was an appeal from a judgment rendered on a directed verdict, we said in speaking of an accident: "When a cause is shown which might produce an accident in a certain way, and an accident happens in that manner, it is a warrantable presumption, in the absence of showing of other cause, that the one known was the operative agency in bringing about the result."

We have been compelled to review this evidence, and in doing so have set out only that favorable to plaintiff. We do not wish to be understood as expressing an opinion as to its weight, nor as suggesting the conclusion that a jury should deduce from it. We only say that it makes a case upon which a jury should pass. The question of negligence is one of law only when from the facts all reasonable men must draw the same conclusion. *McLeod v. Railway Co.,* 104 Iowa, 139, and cases therein cited.—REVERSED.