ALICE WELCH, Appellant, v. L. H. MINKEL et al., Appellees.

No. 41605.

FEBRUARY 14, 1933.

Mitchell & Mitchell, for appellant.

Miller, Miller & Miller and Helsell, McCall & Dolliver, for appellee.

D. M. Kelleher, for A. C. Boggs, defendant.

KINTZINGER, J.—At the close of plaintiff's case, the court, on defendant's motion, directed a verdict against the plaintiff because the evidence was not sufficient to make out a prima-facie case of "recklessness" in operation of a car by the driver.

Both parties concede there is only one question in the case, and that is whether or not sufficient evidence had been introduced on the part of the plaintiff to make out a prima-facie case of reck-

lessness. It will, therefore, be necessary to review the facts in order to determine whether or not the question of "recklessness" should have been submitted to the jury. The facts in this case are briefly as follows:

The collision occurred at the intersection of Second Avenue and Tenth Street in the city of Fort Dodge. Second Avenue is an east and west street, and Federal Highways known as Nos. 20 and 169 both travel along Second Avenue through the city. Tenth Street is one of the principal streets of the city and crosses Second Avenue in a north and south direction. There is a stop sign at the northwest corner of this intersection on Tenth Street, at a point where such signs are usually placed by the Highway Commission. Defendant's car was driven by his son in a southerly direction on Tenth Street about midnight when the collision occurred on the 17th day of January, 1931.

The plaintiff and one of her girl friends met Willard Minkel as he was traveling along Central Avenue just before it reaches Tenth Street, about three blocks from the scene of the accident. The girls were invited into the car. Plaintiff's friend sat in the middle, and plaintiff on the right end of the seat. The driver of the car turned south on Tenth Street about two blocks from the intersection at which the accident occurred. In order to reach the intersection the car crossed over First Avenue. There was also a stop sign on the north side of First Avenue, and the testimony tends to show that the driver of the Minkel car either stopped or slowed up for the crossing at First Avenue and Tenth Street. Then the car proceeded south along Tenth Street at about 20 or 25 miles an hour. As the Minkel car approached the intersection of Second Avenue and Tenth Street it slowed down at the stop sign to about 15 or 20 miles an hour, and then proceeded to enter the intersection. Although Second Avenue is a much traveled highway, the record shows that there was only one other car on the highway at the time of the collision, that being the car with which defendant collided. The first street west of Tenth Street is Ninth Street. The evidence shows that there is an incline on Second Avenue east towards Tenth Street, and Second Avenue becomes level just before and as it crosses the intersection with Tenth Street.

There is no evidence as to what the driver of the Minkel car did. The evidence does show, however, that the plaintiff herself, who was on the right-hand side of the car, looked to the west as

the Minkel car slowed down at the stop sign, but did not see any car approaching from the west. After the Minkel car had slowed down at the stop sign for the intersection, and after the plaintiff herself had seen no car approaching from the west, the Minkel car entered Second Avenue at its intersection with Tenth Street. The plaintiff says that, after looking to the southwest and seeing no car, she looked to the east, and after looking to the east, she again looked toward the west, and then saw the lights of the car with which they collided, which is known as the Boggs car. Just as she looked, the crash came. She testified:

"As we approached Second Avenue South, I was looking to the southwest. I saw the stop sign; the speed slackened to 15 or 20 miles an hour; I thought it was going to stop. When the car commenced to slow it was about 15 feet away from the stop sign. I looked to the southwest but did not see any car approaching from the west. I think Mr. Minkel put the brake on his car. When I saw that he was slowing for the stop sign, I turned my head to the east and I observed that the Minkel car was entering the intersection. By the time I turned my head back, the crash came."

The testimony shows that the plaintiff was quite seriously injured as a result of the collision. She says further:

"When I looked toward the east and then looked toward the west and saw the lights on the Boggs car, and then the crash, the Minkel car was, I would say, a little south of the middle of the intersection. As I recall, we were a little south and west of the middle of the street when the crash came."

The evidence also shows that, before the collision, the Boggs car, with which the Minkel car collided, was coming over a knoll or an incline west of the intersection on Second Avenue, as the Minkel car entered the intersection. The Boggs car was the only automobile on Second Avenue at that time and place, and was traveling between 35 and 40 miles an hour. This speed was in violation of the statute. (Code Section 5030). The Boggs car struck the Minkel car at a point a little south and east of the center of the intersection. The evidence also shows that after the Minkel car had driven onto the intersection, it swerved to the left. There was also evidence in the case by one Intermill, the driver of the car following the Minkel car some distance on Tenth Street, that he saw the rays of

light from the Boggs car as it approached the intersection. The rays of light, however, were thrown upward, and he did not know if they were thrown on the Minkel car, because of the incline from Ninth Street to Tenth Street on Second Avenue, and because of a street light at the intersection of Second Avenue and Tenth Street. There was also a retaining wall along the property line on the west side of the sidewalk on Tenth Street.

The witness Intermill saw the rays of light as the Boggs car was coming over the knoll on Second Avenue, but did not see the car itself until it was probably 10 or 15 feet west of Tenth Street. This witness also says that after the Minkel car entered the intersection its speed was a little more or less than 10 miles an hour. There is also evidence tending to show that a person riding in an automobile 30 feet north from the stop sign on Tenth Street could see about 100 feet to the west on Second Avenue, and at a point 6 feet north of the stop sign he could see about 200 feet west on Second Avenue, both in the nighttime and in the daytime. This is substantially all the testimony offered bearing on the question of recklessness.

In order to make out a prima-facie case of recklessness sufficient for submission to the jury, it is necessary that the evidence offered be of such character as to warrant the jury in believing that the ground of recklessness has been established.

It is conceded on both sides that the only question in the case is whether or not, under the evidence, a case of "recklessness" was made out, because of the defendant's failure to stop at the intersection. The courts have held that failure to stop at a stop sign in and of itself does not constitute recklessness. Neessen v. Armstrong, 213 Iowa 378; Oxenger v. Ward, 240 N. W. 55 (Mich.)

In the case at bar, it is claimed that the driver of the Minkel car, when he entered the intersection, must have seen the Boggs car approaching from the west. This may be so. The evidence shows that the Boggs car was being driven at the rate of 35 to 40 miles an hour, but the evidence does not show that the driver of the Minkel car knew that the Boggs car was traveling at that speed. The Boggs car was also coming up an incline and over a knoll from Ninth street.

The guest statute, known as Section 5026-b1 of the Code, has been considered by this court in several late cases. In the case of Siesseger v. Puth, 213 Iowa 164, this court has defined the meaning of the term "reckless" to be something more than negligence. In

this case the court made an exhaustive review of the authorities in which the term "recklessness" has been construed. The authorities have been fully set out, and it will be unnecessary to do more than refer to that case here. This court has · therein defined the term "reckless" as meaning " 'proceeding without heed of or concern for consequences.' To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'wilfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless,' without being 'willful' or 'wanton,' but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.' "

The term "reckless" as used in this statute has also been defined in a similar manner in the following cases: Kaplan v. Kaplan, 213 Iowa 646; Kaufman v. Borg, 214 Iowa 293; Wilde v. Griffel, 214 Iowa 1177; McQuillen v. Meyers, 213 Iowa 1366.

In the case of McQuillen v. Meyers, 213 Iowa 1366, the word "reckless" was also defined as being something stronger than negligence, or want of reasonable care. Something that "indicates an indifference to consequences, a willingness to take a chance when there is present a perception of danger, and in the operation of an automobile signifies the driving of the car in heedless disregard of consequences; that it does not mean momentary thoughtlessness, inadvertence, or error in judgment."

The testimony offered by plaintiff would, no. doubt, establish a prima-facie case of negligence. Negligence is not sufficient to warrant a judgment for damages to a person riding as a guest and passenger without pay, under our statute.

If the testimony offered in this case is viewed in the light of the testimony given by Miss Welch herself, the driver of defendant's car, if he had looked to the southwest, at the time Miss Welch looked, might not have seen any more than she saw, and she testified that at that time she did not see a car approaching from the west. And if he then turned to look east, which he should have done, before entering the intersection, and then again looked toward the west, he probably saw what plaintiff saw: that is, the Boggs car approaching from the west when it was apparently too late for him to avoid the collision. The evidence shows that the Boggs car was traveling at from 35 to 40 miles an hour. There is no evidence showing that he knew the Boggs car was exceeding the speed limit, and even if he could have seen the Boggs car, he might have believed he

could get on Second Avenue before the Boggs car reached that point; and if the Boggs car had been driven within the speed limit, it might be reasonable to conclude the collision would not have occurred. The evidence also shows that Minkel swerved his car toward the left in an attempt to avoid the collision. This he was unable to do, and his car was struck broadside.

It may well be in this case that the defendant failed to exercise such care as a person of ordinary care and prudence would exercise under the same circumstances, but this would only amount to negligence. In order to take this case to the jury, however, there must be sufficient evidence to establish a prima-facie case of "recklessness."

Some evidence must be shown to warrant a finding that the defendant was guilty of a heedless disregard of or indifference to the rights of others. The evidence shows that the defendant did slow up at the stop sign; that he proceeded at a reduced rate of speed onto the intersection. It was midnight. No other car was in sight on this arterial highway. There is no evidence to show that Minkel knew the Boggs car was approaching at 35 or 40 miles per hour. There is no testimony tending to show that the defendant was utterly disregarding the rights of others. The other girl in the car failed to testify. The defendant's car was not traveling at a high rate of speed. We do not believe that it would constitute recklessness for a driver of a car in the middle of the night to pass a stop sign without stopping, under the circumstances disclosed by the evidence in this case.

It is a well settled rule of law in this state that in an action for personal injuries, based upon negligence, where the facts are undisputed, it is a question of law for the court to determine, on a motion for directed verdict, whether or not there is sufficient evidence of negligence to take the case to the jury. This law is elementary, and needs no citation of authorities to support it.

So, also, where the facts are undisputed, as in this case, it is a matter for the court to determine, on a motion for a directed verdict, whether or not sufficient evidence has been offered to make out a prima-facie case of recklessness. Siesseger v. Puth, 213 Iowa 164; Levinson v. Hagerman, 214 Iowa 1296; Wyma v. Van Anrooy, 244 N. W. 478 (Mich.) ; Koch v. Roehrig, 215 Iowa 43; Wilde v. Griffel, 214 Iowa 1177. In the case of Wilde v. Griffel, this court said:'

"It is said in the opinion of this court in Neessen v. Armstrong,

213 Iowa 378, l. c. 383; 'This action is founded upon recklessness, which means more than negligence. It means proceeding without heed of or concern for, consequences. (Citing case.) In order for conduct to be reckless within the meaning of the law, it must be such as to manifest a heedless disregard for or indifference to the rights of others. We find nothing in the record hereinbefore set out which evinces a heedless disregard of the rights of Neessen, who was seated by the side of the driver. We do not think it could reasonably be said from the evidence that the defendant's conduct, though negligent it may have been, was such a heedless disregard of the rights of Neessen as to justify a verdict in favor of the administratrix. (Citing cases.) * * * The mind is prone to look upon the result, but, unless the acts of the defendant would have been reckless within the meaning of the law without the resulting injury to Neessen, they are not reckless merely because Neessen lost his life. * * * In order for the guest to recover, he must establish one of two things, to wit: intoxication of the driver or reckless operation by him of the automobile. It is quite clear to us that the plaintiff has not made out a case * * *.' " The court in that case also said: "The evidence must disclose something from which recklessness could be legitimately inferred, and as the trial court said in his finding: 'If the only thing you can infer from the evidence is negligence, then the court should not submit the question to the jury. * * * It seems to me as if this statute, if it means what it says, means that the plaintiff must show some act as would be pronounced by every person as an utter indifference to the safety of the guest in his car.' "

So in this case, we do not think it can be reasonably inferred from the evidence offered that the defendant's conduct constituted a sufficient heedless disregard of the rights of Miss Welch to make out a case of recklessness.

From a careful review of the entire evidence offered in this case, we believe that the plaintiff has failed to establish a prima-facie case of recklessness.

We are constrained to hold that the lower court's ruling on the directed verdict was right, and the judgment is, therefore, affirmed. —Affirmed.

Mitchell, J., took no part.

All other Justices concur.