B. F. SHENKLE, Administrator, Appellee, v. W. C. MAINS et al., Appellants.

No. 41777.

APRIL 4, 1933.

REHEARING DENIED DECEMBER 14, 1933.

Chas. H. Hall and C. A. Smedal, for appellants.

Lee, Steinberg & Walsh, for appellee.

EVANS, J.—The accident under consideration occurred shortly after midnight on April 5, 1931. It occurred on the Lincoln Highway at a point four miles west of Marshalltown and near the western foot of a very high hill known as the "four-mile hill". The events leading up to the accident began on the evening before. Defendant Harlan Mains lived at Colo, and the decedent John Shenkle lived on a farm near by. They had been long-time chums and schoolmates. Shenkle was at home on a vacation from school. He was a member of the graduating class in the School of Pharmacy at the University and was 24 years of age. They arranged to attend a dance at Marshalltown for the evening of April 4. Harlan Mains obtained the use of his father's Chevrolet coach and invited

Shenkle to go along. Passing through State Center on their way to Marshalltown, they took in another friend, Harley Reimenschneider, who joined them for the same purpose of attending the dance. The dance was over about midnight and they started their return home. All three young men occupied the front seat of the coach with no occupant in the back seat. "Four-mile hill" is a long and very steep hill. The highway consisted of a paving 20 feet wide. In passing over this hill, the highway had been laid in certain curves. The grade of ascent was 5.75 per cent. The young men had ascended the hill from the east and had come near to its westerly toe when the accident in question occurred. One George Adamson was traveling east and had just begun the ascent of the first rise. He was met by the on-coming automobile from the east. The automobiles passed each other so closely that the Adamson car, an old Model T Ford, was "side-swiped" at its left hind part. The sudden movements following this contact resulted in throwing the three young men out of the coach and inflicting injury upon all of them. The injuries inflicted upon Shenkle resulted in his death within a very brief time. His place on the car's seat was in the middle, with Reimenschneider on the right and Harlan Mains upon the left end. Shenkle is supposed to have been thrown through the windshield. Adamson was only slightly injured. He walked to Marshalltown from the place of the accident immediately following the same. Harlan Mains and Harley Reimenschneider estimated their rate of travel about 35 to 40 miles an hour. Adamson testified on that subject as follows:

"A. No, I don't think so. When I first saw this car I seen the light first, I think it was. Then I see dark. I have never driven a car with a speedometer on it. The first car I had, had one on it. This car didn't have one.

"Q. Now without telling me how fast the car was coming, can you tell me from your observations of that car, how fast it was coming? A. Well, it seemed to me it was going about forty-five miles an hour. A. I think it was coming about forty-five miles an hour."

The petition charged reckless operation of the car by Harlan Mains, in that he was driving at an excessive rate of speed considering the circumstances surrounding him. These circumstances thus referred to consisted of the steepness of the hill and the curves

in the road. The petition also charged that the said defendant was inattentive to the circumstances surrounding him while so driving. These are the only allegations submitted by the court to the jury as constituting reckless operation. Adamson testified that he discovered the on-coming car 400 feet away. He testified at this point as follows:

"There wasn't any bend or curve in that hill for a distance of at least four hundred feet. It was just straight and I could see every foot of the way and the lights on my car showed me the Mains car for a distance of at least four hundred feet. I saw three people in the Mains car."

His description of the accident was as follows:

"A. It seemed to hit the hind part—knocked the wheel off. I found the wheel outside on the hill about thirty feet southwest. They knocked the left wheel off and knocked the fender off and bent the axle. The rear axle where the wheel was, was bent. My car laid over on its side up to the fence post."

The injury to the Chevrolet car consisted of broken glass and a flat tire. Mains himself was severely injured and was carried to the hospital from the place of accident. He testified that he did not see Adamson's car until just before the contact. He testified also that the Adamson car was coming right toward him when he first observed it and that there was a curve in the road at that point, which would turn his course due west. The fact that there was a sharp curve at this point is in accord with the contention of the appellee although the fact was negatived by Adamson, as his witness. The foregoing constitute the salient facts attending the accident. Do they disclose reckless operation on the part of Mains as distinguished from negligence? Such is the question submitted for our consideration.

The defendant Walter Mains is the father of Harlan Mains and was the owner of the car. As such, he was impleaded as a defendant.

■ I. The evidence is without material conflict. We accept it in the light most favorable to the plaintiff. In Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46, we held that in the absence of conflicting evidence it was the duty of the court to pass upon the application of the statute to the facts in the record. The question

presented, therefore, for our consideration is the application to the record of section 5026-b1. Has the plaintiff made out a case of reckless operation? The proper application of this statute presents a question which has given us much study and much concern. The statute calls imperatively upon us to recognize a substantial distinction between negligence and reckless operation. Obedient thereto we have held that reckless operation is not to be deemed as a degree of negligence. It has devolved upon us therefore to recognize and to follow some line of demarcation between the two subjects whereby the facts in each given case may be classified separately rather than intermingled interchangeably. This duty we undertook to perform in Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46. Since our decision in that case, we have had occasion to apply its pronouncements successively in the following cases: Neessen v. Armstrong, 213 Iowa 378, 239 N. W. 56, 59; Kaplan v. Kaplan, 213 Iowa 646, 239 N. W. 682; Wilde v. Griffel, 214 Iowa 1177, 243 N. W. 159; Levinson v. Hagerman, 214 Iowa 1296, 244 N. W. 307. A multiplicity of definitions on such a subject is not particularly helpful. Having laid down in the Siesseger case the line of demarcation to the best of our ability, our remaining duty for the future is to apply the rule without vacillation to the concrete facts of the particular case. Such has been our course in the cases here above cited.

The two grounds upon which recovery may be predicated under section .5026-b1 are *exceptional* and not general. The *general* rule is that a guest cannot recover. The exceptional grounds are: (1) "intoxication" of the driver, (2) "reckless operation" by the driver. The exceptional character of these grounds implies an infrequency of application thereof. To use and apply the exceptions as the general rule, and in effect to supplant the general rule with the constant use of the exceptions, is to drive against a red light. If the application of the exceptions becomes more frequent than that of the general rule, it may well be deemed a warning sign that we are misapplying the exceptions. "Reckless operation", as a ground of recovery, cannot be very satisfactorily defined in hard and fast terms. Nevertheless it· may be readily recognized in the concrete case. In the Siesseger case, we held that it devolves upon the court to recognize it when the material facts are not in conflict. This means that we may not cast upon the jury our duty to say in any case whether the evidence discloses a case of reckless operation as

distinguished from negligence. We cannot therefore permit a case of negligence to be converted into a case of reckless operation by the mere importunity or emphasis of argument. Such is the course, which we have aimed to follow in the cases above cited. All of such cases purported to follow the rule set down in the Siesseger case.

Appellee concedes that at least some of these cases are against his contention, but he contends that they are wrong. One of such cases is Neessen v. Armstrong, supra. In that case we said:

"This action is founded upon recklessness, which means more than negligence. It means proceeding without heed of or concern for consequences. See Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46. In order for conduct to be reckless within the meaning of the law, it must be such as to manifest a heedless disregard for or indifference to the rights of others. We find nothing in the record hereinbefore set out which evinces a heedless disregard of the rights of Neessen, who was seated by the side of the driver. We do not think that it could reasonably be said from the evidence that the defendant's conduct, though negligent it may have been, was such a heedless disregard of the rights of Neessen as to justify a verdict in favor of the administratrix. See Silver v. Silver, 108 Conn. 371, 143 A. 240, 65 A. L. R. 943; Ascher.v. [H. E.] Friedman, [Inc.], 110 Conn. 1, 147 A. 263. The mind is prone to look upon the result, but unless the acts of the defendant would have been reckless within the meaning of the law without injury resulting to Neessen, they are not reckless merely because Neessen lost his life. Our statute, section 5026-b1, Code 1931, was enacted for the very purpose of preventing recovery by a guest of damages resulting from the negligence of the driver of the automobile. In order for the guest to recover, he must establish one of two things, to wit, intoxication of the driver or reckless operation by him of the automobile. It is quite clear to us that the plaintiff has not made out a case."

In the Wilde case the driver of the car failed to discover that he was coming to the end of the road until he was within 100 feet of the turning place. He was driving too fast to make the turn and went into the ditch. We held it to be no reckless operation, as distinguished from negligence.

In the Levinson case, 214 Iowa 1296, 1299, 244 N. W. 307, 308, the driver operated his car over a snow-covered and more or

less slippery pavement at 50 miles an hour. He drove too close to a pile of snow that had been thrown up by the snowplow and his car skidded upon the snow and ice and struck a steel culvert running under the driveway. The driver lost control and the car struck a telephone pole sufficiently hard to break it off. We said in that case:

"The plaintiff's petition is bottomed on the ground of recklessness. Negligence is not enough. In Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46, 54, this court said in the course of an exhaustive opinion on the construction to be placed on the guest statute: 'In light of the circumstances under which said chapter 119 was passed, it is apparent, we think, that the legislature intended the word "reckless" therein to mean "proceeding without heed of or concern for consequences." To be "reckless" one must be more than "negligent." Recklessness may include "willfulness" or "wantonness," but if the conduct is more than negligent, it may be "reckless" without being "willful" or "wanton", but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies "no care, coupled with disregard for consequences".'

"If reckless means 'proceeding without heed of or concern for consequences', or if reckless implies 'no care, coupled with disregard for consequences', may it be said that the conduct of the defendant Moersch was such as to show that he was proceeding without heed of consequences and that he had no regard for consequences? A speed of 50 miles per hour is not evidence of recklessness in and of itself. The evidence shows that Moersch did slow up at some of the places where the roadway was bad. At the point of the accident, the traveled part or north half of the roadway was practically clear of snow. Had the driver of the car not driven too close to the piled up snow on the south of the traveled highway, there would have been no accident. What was said in the recent case of Wilde v. Griffel, 214 Iowa 1177, 243 N. W. 159, may well be repeated as to the construction of the statute here involved. This statute means that the plaintiff must show some act which would be pronounced as an utter indifference to the safety of the guest in his car. No such indifference is shown here. The plaintiff and the defendant Moersch were going from their respective homes to their respective places of business. The defendant Moersch was as in-

terested in reaching. Mason City in safety, as was his guest. * * * In the case at bar, if we divorce our minds from the result to plaintiff, we cannot say that the defendant Moersch was more than negligent, if he was that. This might have been a case for the jury if the charge were based merely on negligence. Under our statute and decisions we have no such thing as degrees of negligence, and, even though negligence is great, it is still negligence. See Hanna v. Central States Electric Co. (1930) 210 Iowa 864, 232 N. W. 421; Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46. Negligence does not rise to the standard fixed by our statute, to wit, recklessness. As we said in the Siesseger case, recklessness implies no care coupled with disregard for consequences."

The foregoing quotations are quite applicable to the case before us. We see nothing to be gained by repeating the argument.

. Pursuant to the cases here above cited, we are required to say that the plaintiff presented a case of negligence and not the exceptional case either of intoxication or of reckless operation.

II. It is the contention of the appellee that section 5028 in its present form, which was enacted since the enactment of section 5026-b1, becomes controlling of section 5026-b1' and becomes a definition thereof. It will be noted that section 5028 is a criminal statute. We considered the question thus raised in the Neessen case, wherein we held against this contention. The appellee further contends that the violation of section 5028 constituted a cause of action of itself and that action could have been predicated thereon. If that be so, yet it must have been upon the theory that a violation of the statute constitutes *negligence.*

III. The appellee furnishes a very extensive and very excellent brief comprising many decisions from many other jurisdictions. These decisions present a variety of views and of interpretations. These authorities are cited in support of the contention that we are wrong in the interpretation of our own statute. How far these citations are inconsistent with our own decisions depends upon the form of the statute to be interpreted in each case. Even if upon close analysis we might find these cases inconsistent with our own, it still remains that they are not wholly consistent with each other and that they are inconsistent with many cases not cited from other jurisdictions. Needless to say that our first and highest concern in the matter must be to maintain consistency in our own decisions. In

doing so we find ourselves under the constant pressure of earnest and eloquent appeals for elementary justice and strong and emphatic characterizations of the conduct of the wrongdoer and of the injustice of the statute as interpreted by us.

We quote from the brief of the appellee:

"It is generally understood that the *insurance companies wrote Section 5026-b1 of the Code of Iowa, and that their lobbyists secured its passage through the legislature.* It may be that they thought in securing the passage of this statute that they would make it impossible for a guest to recover in the State of Iowa. But the legislature did not so write the law, and the courts of this state have not interpreted it as a statute, denying liability in all events."

The foregoing is an indication of the white heat of advocacy. It does not represent the sober second thought of the distinguished counsel, who wrote it. Needless to say that we cannot accept counsel's point of view. The statute in question is in fact an important part of the balances in the scales of legislative justice, regardless of whether it has been well phrased or not. Its function as an equalizer of statutory right and obligation may be illustrated by reference to the facts in this sad case. These three young comrades joined in an enterprise of social pleasure, which no one would begrudge them. In order to carry it out they borrowed an automobile. For the time being they were the arbiters of their own liberty of action. All three of them occupied the front seat. Three grown men in the driver's seat was necessarily detrimental to good driving. The generous lender of the automobile was required by statute to assume the hazards of the automobile upon the road. In the absence of section 5026-b1, the plaintiff would have had to predicate his action upon the negligence of the driver. He would be justly confronted with the defense of contributory negligence. These three young men, all on the front seat, were under duty of lookout and of discovery of approaching cars. But under section 5026-b1 plaintiff may prove reckless operation and escape the defense of contributory negligence. We held in the Siesseger case that a plea of contributory negligence could not be interposed against a charge of reckless operation. Common justice to the lender of the automobile therefore requires that "reckless operation", as distinguished from negligence, be disclosed.

That is to say, section 5026-b1, so severely assailed by counsel,

actually relieves the plaintiff from the burden of proving freedom from contributory negligence. In lieu of such burden, the statute imposes upon him the burden of proving reckless operation. That burden is not met by proof of mere negligence. In our judgment this record discloses a case of negligence and not of reckless operation.

The judgment below is accordingly reversed.

All Justices concur, except MITCHELL and UTTERBACK, JJ., take no part.