SCHNEIDER v. DRAPER.

1. APPEAL AND ERROR—EVIDENCE—DIRECTED VERDICT—JUDGMENT NON OBSTANTE VEREDICTO.

Testimony is taken in light most favorable to plaintiff on appeal of defendants claiming verdict should have been directed in their favor or judgment entered for them *non obstante veredicto*.

2. AUTOMOBILES—DRIVER'S KNOWLEDGE OF DEFECT—WILFUL AND WANTON MISCONDUCT—GUEST PASSENGERS.

Knowledge of driver that right front fender scraped tire as car turned corner because of weight of four boys inside car and two, including plaintiff's decedent, on its right running board and car was harder to steer for that reason *held*, in action by administrator of decedent's estate, not to make driver guilty of wilful and wanton misconduct in continuing to drive car and attempt other corners under such conditions (1 Comp. Laws 1929, § 4648).

3. SAME—DRIVING CAR SLIGHTLY OUT OF REPAIR.

One who drives a car when it is slightly out of repair is not chargeable with wilful and wanton misconduct under guest passenger act if defect developed in an unexpected and unknown manner to cause an accident (1 Comp. Laws 1929, § 4648).

4. SAME—SPEED—ZIGZAG AND RECKLESS DRIVING.

Motorist who intentionally drove car at more than twice legal limit of speed on city street, dodged close to parked car, zigzagged back and forth across street and ran directly toward pole 19 inches from curb and closer than he knew he ought to in the course of careful driving before he attempted to turn while plaintiff's decedent and another boy were guest passengers standing on running board *held*, guilty of wilful and wanton misconduct permitting recovery for death of guest (1 Comp. Laws 1929, § 4648).

5. SAME—GUESTS ON RUNNING BOARD—STEERING.

Knowledge that weight of two boys standing on running board of car made it harder to steer *held*, a circumstance to consider on question of driver's wilful and wanton misconduct in action for death of one of such guest passengers (1 Comp. Laws 1929, § 4648).

6. SAME—EVIDENCE—PROXIMATE CAUSE—QUESTION FOR JURY.

On appeal from denial of directed verdict or failure to enter judgment for defendants *non obstante veredicto* for plaintiff in action for death of 16-year old guest passenger standing on running board of defendants' car, evidence most favorable to plaintiff *held*, to justify submission of case to jury and to permit jury to find proximate cause of accident was due to wilful and wanton misconduct of defendant driver (1 Comp. Laws 1929, § 4648).

7. SAME—INTENTIONAL MISCONDUCT—PROXIMATE CAUSE.

Motorist would not be relieved from liability for accident where his intentional misconduct continued until time thereof and operated thereon by the fact that other conditions unforeseen by him or for which he was not responsible were also present, especially if they would not have caused an accident on careful driving.

8. SAME—WILFUL AND WANTON MISCONDUCT—EVIDENCE.

In action for death of minor guest riding on defendant's running board, actual intention in misdriving car, whether to dislodge or frighten guests on running board would bear upon

driver's intention and its wantonness, but plaintiff is not obliged to point out what was actually in such driver's mind (1 Comp. Laws 1929, § 4648).

9. SAME—WILFUL AND WANTON MISCONDUCT—INNOCENT INTENTION.
Voluntary misdriving of car into a place of obvious danger so as to imperil others subjects driver to charge of wilful and wanton misconduct notwithstanding his plea of innocent intention (1 Comp. Laws 1929, § 4648).

10. SAME—JOINT ADVENTURES.
That defendant driver, other occupants inside car, plaintiff's decedent and another boy who hopped onto running board of car after it had started were all candidates for high school football team on way to field *held*, not to place them in such a common venture or joint undertaking as to relieve owner and driver from liability for latter's wilful and wanton misconduct causing death where he had sole control of car and other boys had no right to direct its movements (1 Comp. Laws 1929, § 4648).

11. SAME—GUEST PASSENGERS—ASSUMPTION OF RISK.
Guests riding on running board of car do not assume risk of driver's wilful and wanton misconduct toward them after their presence is discovered (1 Comp. Laws 1929, § 4648).

12. APPEAL AND ERROR—QUESTIONS REVIEWABLE—SPECIAL QUESTIONS.
Refusal of court to submit special questions to jury is not considered where manner in which answers to such questions would be controlling of general verdict is not apparent nor pointed out by appellants by either brief or argument.

Appeal from Saginaw; Martin (William H.), J. Submitted April 10, 1936. (Docket No. 68, Calendar No. 38,885.) Decided June 16, 1936.

Case by Frederick B. Schneider, as administrator of the estate of Paul V. Schneider, deceased, against William D. Draper and Duane W. Draper for damages for personal injuries sustained by plaintiff's decedent while a guest passenger in defendants' car. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*O'Keefe & O'Keefe* (*Picard & Heilman,* of counsel), for plaintiff.

*Crane & Crane* (*Frank A. Rockwith,* of counsel), for defendants.

Fead, J.   Plaintiff had judgment.  The first question is whether the court should have directed a verdict for defendants or entered judgment *non obstante veredicto.*

October 17, 1932, William D. Draper, one month under 15 years of age, driving his father's car, started from the Saginaw high school to go to the athletic field, taking with him four fellow students, candidates for the high school football team, one of whom was manager, and at least two of whom were two years older than himself.  Just after he started, two other candidates, plaintiff's decedent (16 years old and weighing 160 pounds), and another boy (150 pounds), jumped on the right running board of the car.  Draper made no objection. He drove west on Millard street about half a block to Sheridan avenue, into which he turned south at a right angle and at a speed of five to ten miles per hour.  Because of the weight of the boys on the running board, the front right tire scraped the fender and, as Draper testified, he noticed the car was harder to turn but it did not interfere with his driving.  Otherwise Draper noticed no effect of the outside load.  Going down Sheridan avenue the tires scraped slightly when the car ran over a bump.

Sheridan avenue is not straight.  It runs south and a little easterly from the Millard street corner two blocks to Hoyt street; then south and westerly five blocks to Holden street, where it turns practically due south at the slight angle of 24 degrees.

About 90 feet south of the intersection of Holden street and Sheridan avenue was a telephone pole, set 19 inches west of the curb line of Sheridan avenue, and 52 feet south of it was another telephone pole.    One driving down Sheridan avenue would travel directly toward the first pole.    Sheridan avenue is 26 feet wide at Holden street and 30 feet wide at Martha street, a block north.

The testimony, taken most favorably to plaintiff, is that Draper stopped at Hoyt street for traffic; in the second block south of Hoyt street he "dodged" around a parked car and one of his passengers exclaimed in alarm; from Emerson street, one block south of Hoyt, Draper drove his car zigzagging back and forth from curb to curb at a speed of 45 miles per hour; he was so driving when he was "just about" at Holden street; he was headed for the first pole; he did not begin to turn to the left until he was about 15 feet from the first telephone pole, which was too late; he turned partially but, because of his speed, sharpness of the turn or the weight of the boys on the running board pressing the right fender against the wheel, or a combination of such causes, Draper could not make the full turn although the football manager also took hold of the wheel to aid him; his car touched the first telephone pole, ran partly over a curb, gouged a two-inch slab from the second pole, and stopped a few feet farther on; between the two poles the boys were thrown off the running board and killed.

The question is whether there was evidence to permit a jury to find Draper guilty of gross negligence and wilful or wanton misconduct under the guest act (1 Comp. Laws 1929, § 4648).

The reduction into elements of "wilful and wanton misconduct" in *Willett* v. *Smith,* 260 Mich. 101,

is stressed and all our decisions arising under the act have been digested by counsel. The difficulty in all these cases is that any definition or attempted dissection of the phrase is only relative, not determinative or exclusive, and slight differences in facts produce different results. The meaning of the term "wilful and wanton misconduct" seems to me so plain that general amplification would tend to confuse rather than clarify it.

Although he knew it made the car harder to steer, the scraping of the fender and wheel at Millard street did not convey to Draper knowledge that the weight of the boys on the running board would actually, or be likely to, prevent his making the turn at Holden street. Without such knowledge he would not be guilty of wilful and wanton misconduct in continuing to drive with the boys on the running board. Otherwise, one who drives a car when it is slightly out of repair would be charged with wilful and wanton misconduct if the defect developed in an unexpected or unknown manner to cause an accident. That is not the rule. *Gifford* v. *Dice,* 269 Mich. 293 (96 A. L. R. 1477).

But if Draper drove his car at a speed of 45 miles per hour, more than twice the legal limit, dodged close to a parked car, zigzagged back and forth across the street and ran directly at the pole and closer than he knew he ought to in the course of careful driving before he attempted to turn, and if he did all these things intentionally, his conduct justified a finding that he was guilty of wilful and wanton misconduct if, indeed, it would not so convict him as matter of law. In this connection, Draper's knowledge of the effect upon steering the car, of the weight of the boys on the running board,

was a matter for consideration, although of itself it did not indicate the necessary misconduct. All the circumstances were relevant upon what he knew, what he did, and why he did it.

The testimony favorable to plaintiff presented a question for the jury upon proximate cause. It could have found that the proximate cause was the unexpected locking of the wheels, excessive speed, failure to timely attempt to turn, or a combination of them. So, it could have found that the proximate cause arose out of accident, ordinary negligence, or wilful and wanton misconduct. If Draper's intentional misconduct continued to the time of the accident and operated thereon, the fact that other conditions, unforeseen by him or for which he was not responsible, were also present, would not relieve him of liability, especially if these other conditions would not have caused an accident on careful driving.

While Draper's actual intention, whether to dislodge or frighten the boys on the running board or otherwise, would bear upon his intention and its wantonness, plaintiff was not obliged to point out what was actually in his mind. One may not claim freedom from a charge of wilful and wanton misconduct, as a matter of law, and on a plea of innocent intention, if he voluntarily misdrives an automobile into a place of obvious danger if others are within the range of injury from it.

*Sherman* v. *Yarger,* 272 Mich. 644, urged by defendants, was a border line case. The only claim of wilful and wanton misconduct was in excessive speed. The driver was confronted by conditions not known to him. It was not shown that he intentionally drove at a speed which he knew to be excessive

under the conditions he knew. In *Willet* v. *Smith,* *supra,* the misdriving was the result of negligence, not of wilful misconduct.

The court did not err in submitting the question to the jury.

The boys were not on a common venture or joint undertaking which relieved Draper of liability, because he had sole control of the car and the other boys had no right to direct its movements. The point is clearly discussed in *Frisorger* v. *Shepse,* 251 Mich. 121.

It is not necessary to determine whether the boys on the running board assumed the risk of Draper's ordinary negligence. No authorities are cited nor reasons advanced to indicate that guests, licensees or even trespassers assume the risk of wilful and wanton misconduct toward them after their presence is discovered.

Defendants complain because the court refused to submit four special questions to the jury. Neither in brief nor argument do defendants suggest the manner in which answers to the questions would be controlling of the general verdict. *Tyler* v. *Wright,* 188 Mich. 561, 567. Nor is such control apparent. Not having defendants' specific claims in this respect, we cannot discuss them.

Affirmed, with costs.

NORTH, C. J., and WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.