JAMES R. HEBERT, by his next friend, M. A. HEBERT, appellant,
v. FRANK E. ALLEN et al., appellees.

No. 47550.

(Reported in 41 N.W.2d 240)

FEBRUARY 10, 1950.

OPINION MODIFIED AND REHEARING DENIED APRIL 7, 1950.

B. C. Sullivan, of Rockford, and Larson & Carr, of Charles City, for appellant.

Westfall, Laird & Burington, of Mason City, for appellees.

SMITH, J.—On July 2, 1948, about 2:30 p.m. plaintiff, James R. Hebert (seventeen), and his young friend Richard Hennagir were walking north on Chautauqua Avenue in Charles City en route to near-by Lion's Field to play tennis.

Defendant Robert Hildebrand, driving defendant Allen's Model A Ford, approached them from behind, stopped, and invited them to "hop on." They "hopped on" the right-hand running board to ride the short distance to Lion's Field, Hennagir standing in front of plaintiff.

The car proceeded north, at 15 to 25 miles per hour, and within about one-half block distance swerved off the pavement to the right and sideswiped a telephone or light pole standing about three and one-half feet east of the traveled or black top surface of the street. The black top along there was about 34 feet wide and the grassy shoulder alongside was quite flat and

relatively flush with the pavement. The street was slightly up-grade toward the north. The day was clear and sunny and there was no other traffic along there at that time. The driver was twenty-one years old and had driven since he was seventeen—was familiar with the street, had driven it many times. . There is no evidence of any defect in the car or of any emergency or any circumstances to divert the driver's attention. As the boys stood on the running board they could look over the top of the car but could not see the driver. There was no conversation with him after they started.

Hennagir testified:

"The right-hand side of the car sideswiped the telephone pole and pinned Jim [plaintiff] and myself between the car and the pole." He also said: "The car didn't go hardly at all after it hit the post. It stopped a little ways just right beyond the post * * *. I wouldn't say that it was over ten feet. I don't remember whether the car was on the road after it stopped. or not. I was laying down in the ditch a very short distance from the pole. * * * The ambulance came and picked us up."

Plaintiff testified:

"I would say it was about seventeen feet, maybe between fifteen and twenty feet [south of the pole] when I first noticed the car veering over to the east a little .bit. * * * The right wheels had been traveling probably two or three feet west of the east edge of the dirt before we veered to the east. Just before the accident as I leaned out to look at the post I said, 'What is happening?' I spoke that to Dick Hennagir. Dick said, 'He is probably trying to scare us.' That was all that was said. * * * I don't remember where the car came to rest because I was unconscious."

This is the only testimony as to what occurred.

We have set out these details from plaintiff's evidence as there was none on behalf of defendants. The court directed verdict for defendants on their motion at the end of plaintiff's case.

I. Was the evidence sufficient to go to the jury on the issue of recklessness? That is the real question posed by this

appeal. Our "guest statute" (section 321.494, Code, 1946) is familiar to the profession. It permits recovery by a guest for damages resulting from "reckless operation" of the motor vehicle, in lieu of his former common-law right based on negligence.

■■ On a motion for directed verdict the evidence must be viewed in the light most favorable to the one against whom the motion is directed. Odegard v. Gregerson, 234 Iowa 325, 329, 12 N.W.2d 559. Plaintiff was entitled to every legitimate inference from the facts shown. Degelau v. Wight, 114 Iowa 52, 55, 86 N.W. 36. He was entitled to have taken as established every fact which his evidence fairly tended to prove. Hartman v. Chicago G. W. Ry. Co., 132 Iowa 582, 584, 110 N.W. 10. The evidence should have been given "the strongest interpretation in his favor." Baker v. Langan, 165 Iowa 346, 359, 145 N.W. 513, 518. He was entitled "to the benefit of all the facts which the evidence offered by him tends to prove, giving them the most favorable construction of which they are fairly susceptible in support of his claim." Thompson v. Cudahy Packing Co., 171 Iowa 579, 581, 151 N.W. 470, 471.

In one of our recent decisions we said: "The established rule is that before a court is warranted in directing a verdict, every fact favorable to the party against whom the verdict is asked, and which the evidence *tends to prove*, must be conceded." (Italics supplied.) Comfort v. Continental Casualty Co., 239 Iowa 1206, 1208, 34 N.W.2d 588, 589.

"Even where evidence is undisputed, if different inferences may reasonably be drawn from it, it is for the jury to say what inferences shall be drawn, and they may be guided to their conclusion by the rule as to the burden of proof." Fort Dodge Hotel Co. v. Bartelt, 1941, 8 Cir., Iowa, 119 F.2d 253, 259.

"The court, however, is not at liberty to select one of various inferences that may be drawn from the evidence, and upon that determine the case as upon a question of law. It is for the jury, and not the court, to determine what inference is to be deduced from the facts proven." Olson v. Southern Surety Co., 201 Iowa 1334, 1343, 208 N.W. 213, 217.

"The plaintiff is, of course, entitled to have the benefit of all favorable inferences which reasonably may be drawn from

the evidence." Russell v. Turner, 1945, 8 Cir., Iowa, 148 F. 2d 562, 565.

■ Of course, against the rule thus variously stated we must balance the fact that the burden is on plaintiff to prove defendant's recklessness. But this does not mean he must negative every possibility that might relieve the operator of the car from the charge of recklessness. White v. Center, 218 Iowa 1027, 1032, 1033, 254 N.W. 90.

· II. We need not review the numerous opinions that define recklessness. That it is something more reprehensible than mere negligence is self-evident. The early definition in Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46, 54, though sometimes elaborated, has not been materially improved on. We there said the legislature intended the word "reckless" to mean "without heed of or concern for consequences." "To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'wilfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' without being 'wilful' or 'wanton,' but to be reckless in contemplation of the statute * * * one must be more than negligent." The definition concludes, "Recklessness implies 'no care, coupled with disregard for consequences.' "

We are conscious that this and similar language has been used many times since Siesseger v. Puth was decided. There has been no essential departure from it. It has the merit of being abstract—a necessary quality, since it must be applied to widely differing facts. The case here involves controversy not over the definition but over its application to the facts shown.

■ Defendant-appellees argue that for the case to have been submitted to the jury would have constituted an application of the doctrine of res ipsa loquitur. We cannot agree with this contention. It may be true that only the defendant driver knows the real cause. But we cannot say no reasonable inference is suggested by the movement of the car with him at the wheel. It may be added that the doctrine of "res ipsa" has been applied in cases comparable to this. See Fenstermacher v. Johnson, 138 Cal. App. 691, 32 P.2d 1106, citing Crooks v. White, 107 Cal. App. 304, 290 P. 497, and Ireland v. Marsden, 108 Cal. App. 633, 291 P. 912. We have held otherwise, however. Phillips v. Briggs, 215 Iowa 461, 245 N.W. 720.

But though the doctrine of res ipsa may not apply, it was not for the court to imagine possible explanations other than the obvious one of recklessness. The day was clear and bright, there was no other vehicle in sight, the terrain was flat, there is no evidence of any unusual street condition, the car was apparently under the driver's complete control a matter of seconds before the "accident," no diverting circumstances are shown. When the car started to swerve one of the passengers said to the other "He is probably trying to scare us." That was the natural explanation that came to the mind of one witness as a part of the res gestae. It is a reasonable one under this record. As was said in White v. Center, supra (218 Iowa at page 1033):

"We have no evidence on the part of the defendant, and, if we are to indulge the imagination and conjure possibilities, there is practically no limit to which we may not go. * * * If, before the plaintiff can make out a case, he must negative every possibility which might relieve the defendant from liability, it would be practically impossible to establish a case of negligence or recklessness against the driver of any automobile. Surely, this is not the law."

Neither court nor jury has any way to learn the mental attitude of the driver except by inference from his conduct. As said in Mescher v. Brogan, 223 Iowa 573, 581, 272 N.W. 645, 650: "It is the actions and conduct * * * that measure the degree of care and determine whether or not one is proceeding * * * with a heedless disregard for * * * the rights of others."

Defendants would have us hold there was no evidence here as to the driver's "actions and conduct" from which an inference of recklessness could be drawn. This we cannot do. The movement of the car, under the record presented, was some evidence of the *conduct* of the driver. This is not to say "res ipsa loquitur." It would be just as true if the car had never struck the pole— if there had been no "accident."

We have said that while no presumption of negligence arises from the mere *fact* of injury, "such presumption may and often does arise from the nature of the cause or manner

of the injury." Cahill v. Illinois Central R. Co., 148 Iowa 241, 246, 125 N.W. 331, 332, 28 L. R. A., N. S., 1121.

The statute creates liability for injury due to "reckless operation" of the car. Certainly the jury could have found under this record that the car was being *operated* by defendant Hildebrand. And whether such operation was reckless was clearly a jury question.

We have examined all the cases cited by defendant in support of the court's ruling. Our decision here does not run counter to the ruling in any of them.

 III. Plaintiff argues the court erred in not permitting him to testify as to why defendant Hildebrand drove off the traveled portion of the street. No offer of proof was made upon which prejudice could be predicated. Furthermore, the matter sought to be elicited could only have been a conclusion. If based on facts, they might have been admissible but not the conclusion.

There was no error in the ruling.

 IV. Defendants urge that "plaintiff, by voluntarily riding upon the running board, assumed the risk incident thereto." The proposition is unsound. The doctrine of assumption of risk originated in the relation of master and servant and similar contractual situations. See discussion and citations in Edwards v. Kirk, 227 Iowa 684, 288 N.W. 875, including White v. McVicker, 216 Iowa 90, 246 N.W. 385, and Stingley v. Crawford, 219 Iowa 509, 258 N.W. 316.

We need not trace the development of the doctrine and its application to other situations. It is sufficient to say we know of no case that would warrant its application here by either court or jury.

When plaintiff mounted the running board there was no apparent or threatened danger such as almost immediately afterward developed; and when it did threaten plaintiff had no reasonable alternative offered him by which to avoid it.

For the error in sustaining defendants' motion for directed verdict the case is reversed.—Reversed.

BLISS, C. J., and OLIVER, GARFIELD and MULRONEY, JJ., concur.

WENNERSTRUM, HALE, MANTZ, and HAYS, JJ., dissent.

WENNERSTRUM, J. (dissenting)—I respectfully dissent from the majority opinion. I am firmly convinced that the conclusions reached are unsound, that our prior opinions do not support the general holding therein announced, that it is a departure from our previously announced conclusions pertaining to recklessness cases, and in my opinion, commits this court to the holding that from mere inferences a claim of recklessness can be maintained.

It would be of no benefit to the bench and bar to again summarize our repeated comments on what is and is not recklessness. It is sufficient to say that in order to make out a prima facie case of recklessness sufficient for submission to the jury it is necessary that the evidence offered be of such a character as to warrant the jury in believing that the grounds of recklessness have been established. Welch v. Minkel, 215 Iowa 848, 851, 246 N.W. 775. On the basis of this announced holding it is impossible for the writer of this dissent to see how it can be said that in the case now before this court the evidence is of such a character as to warrant a jury in believing that the grounds of recklessness have been established. In the instant case there is a total absence of such grounds. It is even doubtful if evidence has been presented from which an inference of recklessness can be drawn. If this court is to follow the reasoning and conclusions of the majority opinion all recklessness cases where the evidence is alone based on inferences must be submitted to a jury for consideration regardless of the facts presented or the failure to present them. In the case of Shenkle v. Mains, 216 Iowa 1324, 1328, 247 N.W. 635, 637, this court said:

"The two grounds upon which recovery may be predicated under section 5026-b1 [321.494, 1946 Code] are *exceptional* and not general. The *general* rule is that a guest cannot recover. The exceptional grounds are: (1) 'intoxication' of the driver, (2) 'reckless operation' by the driver. The exceptional character of these grounds implies an infrequency of application thereof. To use and apply the exceptions as the general rule, and in effect to supplant the general rule with the constant use of the exceptions, is to drive against a red light. If the application of the exceptions becomes more frequent than that of the general

rule, it may well be deemed a warning sign that we are mis-applying the exceptions. 'Reckless operation', as a ground of recovery, cannot be very satisfactorily defined in hard and fast terms. Nevertheless it may be readily recognized in the concrete case. In the Siesseger case, we held that it devolves upon the court to recognize it when the material facts are not in conflict. *This means that we may not cast upon the jury our duty to say in any case whether the evidence discloses a case of reckless operation as distinguished from negligence.* We cannot there-fore permit a case of negligence to be converted into a case of reckless operation by the mere importunity or emphasis of argu-ment. Such is the course, which we have aimed to follow in the cases above cited. All of such cases purported to follow the rule set down in the Siesseger case." (Italics supplied.)

This court said in Wilde v. Griffel, 214 Iowa 1177, 1180, 1181, 243 N.W. 159, 160, that the plaintiff must show some act which would be pronounced as an utter indifference to the safety of the guest in his car. It was stated in the last cited case:

"The evidence must disclose something from which reck-lessness could be legitimately inferred, and as the trial court said in his finding:

" 'If the only thing you can infer from the evidence is negligence, then the court should not submit the question to the jury. * * * It seems to me as if this statute, if it means what it says, means that the plaintiff must show some act as would be pronounced by every person as an utter indifference to the safety of the guest in his car. Here, we have no intimation that the driver didn't do everything he could to stop, no evidence at all on that question as to what he did.' "

Applying the holding in the Wilde case to the present case I am unable to find under the record presented any act on the part of the driver of the car which "would be pronounced by every person as an utter indifference to the safety of the guest in his car." In the instant case as in the case quoted there is no intimation that the driver did not do everything he could to stop.

Is there any evidence in the present case from which reck-lessness could be legitimately inferred? I do not think so. There

is no question that the appellee-driver was operating a car at a speed not in excess of 20 to 25 miles an hour. When within approximately 27 feet of a pole the car veered to the right and the running board sideswiped the pole resulting in injury to the appellant. The car was brought to a stop within 4 to 10 feet beyond the pole. It may be admitted that the appellee-driver knew that the particular pole was there but can it be said from all the facts disclosed by the evidence that a legitimate inference can be drawn that the driver operated the car with a heedless disregard for or indifference to the rights of others and a disregard for consequences. I am unable to reach such a conclusion and am likewise unable to conclude that in operating the car it is shown by all legitimate inferences that the driver had an utter disregard for the welfare of his guests. It must be remembered that there is no evidence of the driver making any statements as to how or why the car was driven or what caused it to go off the road. It is true there was a statement made concerning this matter by Hennagir but his statement cannot be attributed to the driver. As heretofore stated in Wilde v. Griffel, supra, the evidence must disclose something from which recklessness could be legitimately inferred. The majority opinion therefore must be construed to mean that this court is holding there is sufficient evidence by which recklessness could be legitimately inferred. If recklessness can be found from the facts in this case it must be upon the inferred theory that the driver deliberately drove the car off the road and for the purpose of coming close to the pole and thereby frightening his guests. I do not see how this can be inferred from the facts. This court has heretofore held that in the matter of proof the litigant is not justified in inferring a fact as proven from the mere possibility of its existence. Even negligence cannot be predicated upon presumption or inference. Phillips v. Briggs, 215 Iowa 461, 465, 245 N.W. 720. In United States Fidelity & Guaranty Co. v. Des Moines National Bank, 8 Cir., Iowa, 145 F. 273, it is held that an inference of fact cannot be legitimately drawn from a rebuttable presumption but only from premises which are certain. In the record as presented I am unable to find any evidence from which it can be held with certainty that the suggested inference is justified.

Inasmuch as appellant's case is based on an inference of recklessness it is well to give consideration to what has been said concerning an inference of fact. In 31 C. J. S., Evidence, section 116b, page 727, it is said that an inference of fact should not be drawn from premises which are uncertain but the facts on which an inference may legitimately rest must be established by direct evidence as if they were the very facts in issue. This inference of fact which the appellant must prove has not, in my opinion, been established by direct evidence. This court should recognize that fact.

In the case of Chicago, Milwaukee & St. Paul Ry. Co. v. Coogan, 271 U. S. 472, 477, 46 S. Ct. 564, 566, 70 L. Ed. 1041, in commenting upon a railroad-accident death case it is stated:

"It follows that, unless the evidence is sufficient to warrant a finding that the death resulted from the catching of deceased's left foot under the bent part of the pipe line, the judgment cannot be sustained. As there is no direct evidence, it is necessary to determine whether the circumstances are sufficient to warrant a finding of that fact. Whenever circumstantial evidence is relied on to prove a fact, the circumstances must be proved, and not themselves presumed. United States v. Ross, 92 U. S. 281, 284, 23 L. Ed. 707, 708; Manning v. John Hancock Mut. L. Ins. Co., 100 U. S. 693, 698, 25 L. Ed. 761, 763."

It is further stated in the last cited case as follows:

"Even if the appearance of the shoe and other circumstances are sufficient to justify an inference that the depression might have been made by the bent pipe, it cannot be said that they constitute any reasonable support for a finding that it was so made. And, assuming that the depression on the shoe counter was made by contact with the bent pipe, there is nothing to indicate whether it was made at the time deceased was knocked down or later while he was being dragged. But there is nothing to show that the pipe had any connection with the accident. The fact that deceased was run over and killed at the time and place disclosed has no tendency to show that his foot was caught."

In Welsch v. Frusch Light & Power Co., 197 Iowa 1012, 1022, 193 N.W. 427, 432, it was stated by this court as follows:

"Ordinarily, proof of a material fact is not accomplished by inference from any one isolated incident or circumstance, but by the combination or aggregation of many related circumstances, each lending more or less support to the other and to the conclusion sought to be established."

Here we only have one isolated fact—that the car went off the road and from that fact alone the majority opinion holds that by an inference from this one isolated incident recklessness can be found. There is no combination or aggregation of many related circumstances from which recklessness can be established. In fact up to the time the car went off the road it is shown to have been driven at a very moderate rate of speed.

Although the facts are not similar this court in the recent case of Olson v. Hodges, 236 Iowa 612, 624, 19 N.W.2d 676, 683, said:

"Driving at a speed of twenty-five miles an hour and slowing down for curves or other interference, and then going a little faster, maybe thirty miles per hour or a little more, on a 'good stretch,' is not operating a car in daylight on a country road with 'no care,' 'utter indifference to safety,' and 'in heedless and entire disregard for consequences.' "

It is true that in this last cited case there was evidence of there being snow and mud on the road which may have caused the automobile to skid.

The state of Nebraska has a guest statute somewhat similar to the Iowa statute although "gross negligence" instead of recklessness must be shown in order to hold a driver liable for injuries to a guest. Despite the difference in statutes we believe the factual situation shown and the comments made in the case of Oakes v. Gregory, 133 Neb. 407, 409, 275 N.W. 607, 608, can advisedly be referred to in this dissent. This is particularly true when consideration is given to the near similarity of the facts. In the cited case the speed of the car was shown to be between 20 and 25 miles an hour at the time of the accident. The car was being driven on a paved highway which had some snow and ice on it. By reason of some unaccountable cause the car left the road and struck a tree about 10 or 12 feet from the pavement. The plaintiff's testimony, in part, was: "Well, it

is just one of those accidents that you can't account for, it simply went straight into the tree and to my knowledge did not skid." The statement of the Nebraska court can be applied to the facts in the instant case. It said:

"The evidence in this case shows that the driver of the car had no knowledge of any impending danger. The car was being driven at a reasonable rate of speed and without any protest from the plaintiff. The evidence of plaintiff was that Mrs. Gregory had been driving carefully until the accident occurred. There is no evidence in the record as to the cause of the accident. Neither does the record disclose any act done by the driver of the car that even indicates that it was the result of any fault of hers. There is no evidence of any negligence on the part of the driver of the car, and necessarily no evidence of gross negligence as required by the guest statute."

In another Nebraska case—Munsell v. Gardner, 136 Neb. 214, 285 N.W. 555, the facts show that the driver of a car was operating it at a speed of 20 to 30 miles an hour. In making a turn at an intersection, the driver failed to put on the brakes, apparently lost control of the car and struck a tree approximately 70 feet from the intersection and 5 or 6 feet from the curb. That court held there should have been a directed verdict because the facts as disclosed by the evidence did not show gross negligence.

My attention has been called to the case of Schneider v. Draper, 276 Mich. 259, 267 N.W. 831, where it is held that the case was properly submitted to a jury. It is shown that two boys had jumped on the running board of the driver's car, the car proceeded several blocks during which a corner was turned and by reason of the weight of the boys on the running board the tires scraped the fenders. It is further shown that the car was driven at or about the time of the accident at a speed of 45 miles an hour, and that the driver had been dodging in-and-out of the traffic. It was while the car was being so driven that the automobile struck a pole near the curb with the resulting death to the two boys riding on the running board. The facts in the last cited case are far different from those shown in the case this court is called upon to consider.

Inasmuch as I do not want a ghost of the past to later haunt me I desire to express my disapproval of the majority opinion. I would affirm.

HALE, MANTZ and HAYS, JJ., join in this dissent.