FRANCES DUNCAN, by her Next Friend, D. W. DUNCAN, Appellant, v. FAYE LOWE, Appellee.

No. 42715.

JUNE 19, 1936.

Sampson & Dillon, for appellant.

Hallagan, Fountain & Stewart and Korf & Korf, for appellee.

RICHARDS, J.—In this law action plaintiff seeks to recover damages for personal injuries received while riding in an automobile that was being operated by defendant. Admittedly plaintiff was so riding as a guest by invitation of defendant. By reason of that fact defendant was not liable for any damages sustained by plaintiff unless same were caused as a result of defendant being under the influence of intoxicating liquor or because of reckless operation by defendant of the motor vehicle. Section 5026-b1, Code 1931. The question of intoxicating liquor is not involved. Plaintiff's case is based on the claim that plaintiff was injured because of reckless operation of the car. At close of plaintiff's evidence defendant moved for a directed verdict alleging as ground therefor that there was insufficient evidence of reckless operation to warrant submission of the issue to the jury. The motion was sustained, judgment was rendered against plaintiff, and therefrom plaintiff has appealed. The only question is whether there was sufficient evidence to take the case to the jury. Following is a review of the evidence, a considerable part thereof being testimony of defendant, as plaintiff's witness.

Plaintiff was thirteen years of age. She resided in Jasper county with her father and mother, the latter, Mrs. Duncan, be-

1280

ing defendant's sister. Faye Lowe, the defendant, was thirty-seven years old, and a resident of Denver, where for years she had been employed as a school teacher, and for the nine years prior to the accident as a governess in a private family. In this latter employment she frequently drove automobiles of various makes. She owned a single seated Ford V-8 with a canvas top and a rumble seat at the rear. In July 1932 defendant had driven this car from Denver to the home of her sister Mrs. Duncan in Jasper county. After defendant had visited for a week in the Duncan home, it was planned by her and by Mrs. Duncan, that these two sisters and Mrs. Duncan's children, being plaintiff and two younger boys, would make a drive in defendant's car to visit another sister living in LaGrange, Illinois. The plan was executed, defendant driving the Ford to LaGrange, accompanied by Mrs. Duncan and the three children. After a week's visit in LaGrange the return trip was undertaken in the same manner, defendant driving the Ford accompanied by the same persons. The night before the party left LaGrange was warm, and defendant complained that she hadn't slept well or hadn't slept at all, though she retired to bed in ordinary manner. On this return trip Davenport was reached in time for lunch. Thereafter, while the party was leaving that city, a motorcycle rider not observing properly the traffic signals ran into the rear right side of defendant's car but without particular damage. This happening disturbed defendant leaving her trembling after this occurrence. A man turned the car around for her. The occupants temporarily left the car to go to a garage and to report the accident. The journey toward Jasper county was then resumed, defendant driving the greater part of the time at forty miles per hour. During this trip all were having a pleasant time, and defendant was doing everything suggested by any of the party for their comfort, changing positions of the children in the seats, stopping to buy candy, and having tarried at Davenport for some little time to enjoy a little rest. After the party was in the vicinity of the town of Oxford discovery was made that the fuel supply was low, and it was the intention of the two sisters to procure a new supply at that town, but the highway not entering the town it was then agreed to procure the gas at the next station. There was also some conversation at about this time between defendant and Mrs. Duncan as to the time when they would reach home. Defendant suggested that they were not making very good time

and Mrs. Duncan said that it was nothing to worry about, not to drive fast, as the time they reached home made no difference to her. From this point on defendant drove at somewhat increased speed, one witness saying perhaps as fast as 50 miles per hour, Mrs. Duncan saying over 50 miles per hour. When the party had reached a point a few miles east of Marengo, without any apparent cause, the car suddenly swerved from one side of the road to the other, and after two or three or four swerves, went off the pavement onto the shoulder and tipped over on its right side, injuring plaintiff who was riding in the rumble seat. There was no warning that anything was about to happen to the car, and no witness attempts to state any definite cause of what did happen. The whole occurrence occupied a very brief period of time. When the car first swerved defendant immediately applied the brakes and pulled the car back, but pulled too far and it swerved again. Defendant tried to straighten up the car and regain control as far as she was able to do so. During the period that the car was swerving Mrs. Duncan cried out to defendant to shut off the gas. The place of the accident was upon a paved primary highway, the pavement being dry and free from any obstructions or interfering traffic. The highway at this point was straight and level. Defendant was driving west in the bright daylight of late afternoon. The day was very warm and the party had been on their journey since leaving LaGrange at six or six thirty in the morning. Defendant testified she was not conscious of a weariness or tiredness, and did not think about being tired but may have made some remark to Mrs. Duncan about tiredness. No witness claims defendant fell asleep and the defendant's testimony is that she knows for sure she was not asleep but she says, "I think I just sort of lost myself for perhaps a second." She also testified that she imagined that during the afternoon she still was suffering, somewhat at least, from the nervousness that was caused by the motorcycle accident in Davenport.

Upon this record appellant contends that reckless operation of the car by defendant could be found as a fact by a jury, from the testimony that when weary, and in need of sleep on account of insufficiency thereof on the previous night, and when still feeling the nervousness caused by the motorcycle affair, defendant continued to drive the car, and at a speed of fifty or over fifty miles per hour.

The happening of the accident, in itself, does not establish

recklessness. It is well to keep in mind that unless the acts of defendant would have been reckless within the meaning of the law without the resulting injury to plaintiff, they are not reckless merely because the unfortunate injuries were sustained. First, we limit ourselves to consideration of defendant's acts after she passed Oxford down to the instant the car first began swerving. During this period the rate of speed according to one of plaintiff's witnesses was perhaps as much as fifty miles per hour, according to another witness in excess of fifty miles but without any evidence of the extent of the excess, if any. The highway was paved, and at the place of the accident straight, level and free from any obstructions. There was bright daylight. Under these physical conditions the rate of speed shown could not of itself warrant a finding of recklessness. But appellant says there were additional considerations that did make the driving by defendant at this speed a reckless act, that is her weariness and nervousness. In the case of Kaplan v. Kaplan, 213 Iowa 646, 239 N. W. 682, there was evidence that the driver was tired, had not slept much the night before, and fell asleep while driving. While he slept the car rolled over a few times, injuring the plaintiff-guest. It was held the fact that he was tired and facing the morning sun did not raise any negligence there may have been to the level of recklessness; and that the unconscious conduct while asleep, or semi-conscious conduct while going to sleep, or the mere fact that he permitted sleep to overcome him, did not evince a heedless disregard of the rights of his guest. In the case at bar there is no evidence the driver was asleep unless it be she "just sort of lost herself for perhaps a second." If this means she started to fall asleep, or even momentarily was asleep, the culpability, if any, was of no greater degree than in the Kaplan case. That defendant may have "lost herself for perhaps a second" is the only evidence from which it could be found that any weariness affected or lessened her ability to properly operate the car. Finding no distinguishing circumstances we are of opinion the holding in the Kaplan case determines that the element of weariness in the case at bar did not raise the possible negligence to the level of recklessness.

Defendant's testimony, as plaintiff's witness, that she imagined that during the afternoon she continued to suffer at least somewhat the nervousness engendered when the motorcycle struck the car, is also relied on as one of the elements warrant-

ing a finding of recklessness. Whatever information was conveyed to the jury by defendant's statement regarding nervousness is so conjectural that we think it afforded nothing of substance to be weighed on the question of recklessness. The extent and character of the nervousness, and whether it in any way incapacitated defendant, in no way shown, could not be established by assumption or speculation by the jury. It may also be taken into consideration on the question of recklessness that plaintiff has shown no word or act on defendant's part indicating no care for the rights of others, or indicating disregard for consequences, the opposite being the very apparent attitude of defendant as shown by plaintiff.

Consideration of the acts of defendant after the car commenced swerving requires but few words. Unquestionably she did all in her power to regain control and avert the result. No recklessness can be found therein.

Viewing all the evidence in a light as favorable to appellant as is reasonably possible, we conclude it did not warrant a finding of reckless operation within the terms of the statute in question, as interpreted in prior opinions of this court so frequently that repetition seems unnecessary.—Affirmed.

DONEGAN, C. J., and ANDERSON, MITCHELL, HAMILTON, PARSONS, STIGER, KINTZINGER, and ALBERT, JJ., concur.