GERTRUDE MAYER, Appellant, v. FRED SHEETZ, Administrator, Appellee.

No. 43820.

MAY 11, 1937.

REHEARING DENIED DECEMBER 17, 1937.

Edgar C. Hamilton, for appellant.

Putnam, Putnam, Fillmore & Putnam, H. F. Wagner and C. G. Updegraff, for appellee.

RICHARDS, C. J.—Plaintiff seeks damages from defendant-administrator on account of physical injuries she sustained while riding as a guest in an automobile being operated by defendant's decedent. The statutory rule is that for such injuries a guest may not recover from his or her host. The only exception, so far as concerns this case, would be in event the damages were caused by decedent's reckless operation of the car. Section 5026-b1, Code 1935. Plaintiff alleged there was such reckless operation, but after all her evidence had been introduced the district court held it was not sufficient to warrant submitting the question to the jury. A verdict was directed for defendant, and a judgment rendered against plaintiff. Therefrom plaintiff has appealed.

The evidence that was before the trial court, when it made its ruling, fixes Friday, the thirteenth of September, 1935, as the date of the occurrence in which plaintiff was injured. At eight o'clock in the evening of that day, plaintiff and her husband, brother, sister and two friends had driven to decedent's farm home. The two families, plaintiff's and decedent's, had been long time friends, often in this manner visiting in each others' homes. Shortly after nine o'clock of the same evening the whole party, assembled at decedent's home, decided to drive to the town of Richland, a few miles away. Accordingly decedent and his wife, and plaintiff and her brother entered decedent's car and started toward town, decedent driving. Plaintiff's brother sat to the right of decedent in the front seat and decedent's wife to the right of plaintiff in the rear seat. The others of the party followed in another car. After driving west a short distance decedent reached primary highway No. 77 and started south thereon. The car then traveled first over a level stretch, then down a long hill and over a river bridge, then around a curve, then across a little flat, then up a hill and over its brow to the place of the accident on the hill's south slope. From the river bridge to the place of the accident was a little less than a mile. On the south slope of the hill last mentioned decedent's car and another car, driven by one Morrow, traveling

north at thirty to forty miles per hour on the same highway, did not succeed in passing in safety, some part of the left side of each car contacting some part of the left side of the other. That is, the cars sideswiped. After the impact the Morrow car went on and stopped, without leaving the road, about forty feet north of the place of the contact, headed southwest. Decedent's car proceeded on south for approximately two hundred feet and then went off the high fill at that point into a ditch on the east side of the highway.

The recklessness of decedent alleged in plaintiff's petition was the "operating said car at a high, dangerous and excessive speed, in the nighttime, on a loosely graveled highway, in the center of said highway, in a reckless and heedless manner without out heed of or concern for the consequences." The salient evidence with respect to each of these specific allegations may be stated as follows: First, as to speed, there was plaintiff's testimony that decedent's car gained speed coming down the first hill and in her opinion was traveling sixty miles per hour at the river bridge; that the speed increased thereafter and in plaintiff's opinion the car was traveling seventy or seventy-five miles per hour immediately prior to the accident. But it also affirmatively appears from plaintiff's testimony that there was no swerving of the car, nor are there shown any other circumstances indicating that any loss of control resulted from or accompanied the speed. The car pursued a straight course though it crossed a bridge and rounded a curve. Second, admittedly it was nighttime. Third, with respect to the allegation that decedent was driving on a loosely graveled highway, the evidence is that it was a primary highway, graveled surfaced. But there is no evidence that there was danger in driving upon this particular road that would not be inherent in driving upon any primary highway similarly surfaced, the testimony being that "as graveled roads go" the highway was in good condition. It was more solid in the center because traffic made more use of that portion of the highway. There was more gravel that was loose as the edges of the road were approached where on each side there was a ridge of loose gravel left there by machines used in conditioning the road's surface. Plaintiff testified she heard gravel hitting the fenders of decedent's car. Fourth, as to the allegation that decedent was driving in the center of the highway, it is plaintiff's testimony that for some distance before the accident

decedent was so doing, but the testimony also is that there were no other cars on the road entitled to one-half thereof until the Morrow car appeared. Plaintiff also testified that "at the time *just before* we were going up the grade to the top of the brow of the hill the Singmaster (decedent's) car was in the center of the road." Defendant contends that in above quotation there is no statement by plaintiff that the car was traveling in the middle of the road as it reached the top or brow of the hill and went down on the other side to the place of the accident. We agree, that there is such lack of testimony unless it can be inferred from plaintiff's testimony that "Singmaster's (decedent's) car did not swerve immediately·before the accident, it just went straight down the road." There were no markings upon the surface of this road that would afford plaintiff exact information as to the location of the center line. But irrespective of plaintiff's foregoing testimony, she has shown in her evidence certain physical facts upon which she relies, and these quite definitely establish the following matters as to the location of decedent's car when the cars came into contact. At the place of the accident the road was about twenty-four feet eight inches in width inside the ridges of the gravel that were along the edges. The impact of the cars caused the left front wheel of the Morrow car to make a gouge in the road surface. The center of this gouge was four inches east of the center of that part of the road that was between the gravel ridges. About forty inches southwest from this gouge, but more south than west, begin a succession of other gouges extending principally south and a little west that were made by the wheels of decedent's car, showing evidence of applying or dragging of the brakes.

Plaintiff also offered as a witness the driver of the Morrow car. He testified that he had been over a little bit on the left side of the road and when he saw the reflection of the lights of decedent's car showing over the brow of the hill he did not have much pulling over to do. He testified that as the cars came together he was reasonably on his right side of the road. This statement he later explained by saying that he meant he was on the right side of the road.

This court has said that "Whether a particular speed of an automobile is dangerous depends upon the surroundings." Hart v. Hinkley, 215 Iowa 915, 918, 247 N. W. 258, 259.· Plaintiff cites, as ruling the case at bar, several opinions of this court in

which, there being a high rate of speed, it was held that the question of reckless operation was one for the jury. But in these cases there were material facts and surroundings the consideration of which, in connection with the rate of speed, leads to the conclusions. In the case before us facts and surroundings of like nature do not as fully appear. In Hart v. Hinkley, 215 Iowa 915, 247 N. W. 258, in connection with testimony of speed of seventy miles per hour, on a graveled road, in the evening, there was the additional circumstance that the course of the highway necessitated an abrupt turn to the right to cross a small bridge and then a more or less abrupt turn to the left after making the crossing, the driver being familiar with the highway generally. The accident occurred in the attempt to negotiate these turns. This hazard given consideration in the Hart case has no counterpart in the case at bar. Siesseger v. Puth, 216 Iowa 916, 248 N. W. 352, is not controlling. In that case a number of factors, found in the opinion, accepted as circumstances to be considered on the question of recklessness, additional to the rate of speed, we do not have here. In White v. Center, 218 Iowa 1027, 254 N. W. 90, in addition to the evidence of high rate of speed, the court took into consideration the evidence that it was sufficiently daylight that for a distance of a quarter to a half mile the driver of the automobile could and would have seen the wagon with which he collided had he been looking, the wagon being well over to the east edge of the paving or even partly off the paving and on the shoulder, proceeding in the same direction as was the automobile. The court also took into consideration the evidence that the driver did not slow down his car, with the wagon in such clear sight, and that there was no other car crowding defendant's car into the wagon. The opinion holds that the jury would have been warranted in finding that had the driver of the car *used any care whatever* in *keeping* a *lookout* ahead he must have seen the wagon within a sufficient distance to have slowed down easily and turned out, and even if he did not see the wagon the jury might have found he was reckless in *using no care whatever*. In the case at bar there is no evidence, as in the White case, from which a jury could find that decedent failed to keep a lookout ahead, or that there was no care whatever in that respect. There was no object in plain sight, as in the White case. The presence of the Morrow car was not evident until immediately before the impact. In the

case of Wright v. Mahaffa, 222 Iowa 872, 270 N. W. 402, in addition to an alleged speed of seventy miles per hour, there was evidence that the car was being driven down a loose graveled road, weaving or swerving from one side of the road to the other for the distance of a quarter of a mile or fifteen hundred feet as it approached the crossing of a railroad track and a depression at the foot of the hill, with the result that the car finally left the road, ran into a ditch and turned over two or three times. It is apparent that, excepting the testimony as to high rate of speed, salient facts and circumstances such as were determinative of the Wright case do not appear in the case at bar.

Viewing these and other like cases it is our opinion that in no instance have we held that a jury question was generated when the plaintiff was so nearly dependent on estimated rate of speed alone as in the case here. Reckless operation, as a ground of recovery, cannot be very satisfactorily stated in hard and fast terms. But the guest statute calls imperatively upon this court to recognize a substantial distinction between negligence and reckless operation. Shenkle v. Mains, 216 Iowa 1324, 247 N. W. 635. And we are convinced that, to recognize recklessness in the facts before us, as distinguished from negligence, would be proceeding unwarrantedly in the direction of eventually so applying the exception as to supplant the rule itself. Nor do we think that the evidence relied on by plaintiff, to establish that there was in decedent's mind an indifference to consequences and a willingness to take a chance, overturns the above conclusions as to the actual manner and surroundings of the operation of the car. What is alluded to is plaintiff's testimony that as the car was going up the hill, on the south slope of which the accident occurred, her brother put his hands to his head and said: "For God's sake don't go so fast," the decedent shaking his shoulders and chuckling. Plaintiff also relies on her own testimony that decedent's wife screamed, "Clarence," just as there were some bright lights and the crash. Plaintiff's case depended on establishing that decedent actually did operate the car in a manner that was reckless. If it be conceded to plaintiff that on that question some light might be shed by evidence as to decedent's mental attitude, yet in this case the state of mind of decedent, as claimed by plaintiff, does not appear of sufficient moment to supplant plaintiff's own positive and definite testimony and showing that decedent in fact did certain things under certain

surrounding circumstances, nor to materially weaken the conclusion made necessary by such positive and definite showing as to the character of such acts.

A specification of recklessness largely relied on by plaintiff is that decedent was driving in the middle of the road. There would of course be not even negligence in so doing at a time when no other vehicle was entitled to use one-half. And when another car did appear, entitled in passing to occupy half the road, decedent in passing such car was not only not driving in the middle of the road, but was sharing the road with the other vehicle to such an extent that it might be difficult to conclude whether decedent's car was or was not wholly on its own side. And decedent must have been occupying the same relative portion in the road for some appreciable distance before the attempted passing of the cars, because plaintiff as the only witness on that question, says there was no sudden swerve just before the collision, but on the contrary decedent's car was going straight down the road.

We hold the district court was not in error.

Case is affirmed.—Affirmed.

ANDERSON, SAGER, STIGER, and PARSONS, JJ., concur.

HAMILTON, J., taking no part.