HAROLD E. GOETSCH, a minor, by GRACE J. GOETSCH, his mother and next friend, appellant, v. CARL B. MATHESON et al., appellees.

GRACE J. GOETSCH, appellant, v. CARL B. MATHESON et al., appellees.

No. 48573.

(Reported in 68 N.W.2d 77)

JANUARY 12, 1955.

REHEARING DENIED MARCH 11, 1955.

Burt & Prichard, of Emmetsburg, for appellants.

Kelly, Spies & Culver, of Emmetsburg, for appellees.

SMITH, J.—The sole question here is the sufficiency of the evidence of recklessness to create a jury question. The record is commendably condensed to present that problem.

Harold E. Goetsch (17) the injured guest was, on August 28, 1952, riding in a car driven by his friend, defendant Leonard Matheson, and owned by Leonard's father, defendant Carl B. Matheson. The guest relationship and owner's consent to use of the car are unquestioned.

All parties lived at Ringsted, Iowa. Harold testifies he and Leonard met at the theater and were going "after our dates." He says: "We drove through town a couple of times in his car and then headed for Graettinger. We left Ringsted about five minutes after 8. It was raining, was awfully dark, and visibility was poor as far as seeing a great distance ahead."

About three miles south of town they turned west on a gravel road. "I was not familiar with the road * * * after we turned west. * * * It was raining * * *. The car was being driven at a speed of approximately fifty miles per hour." About a mile west of where they turned the road ends by T intersection with a north-and-south road—referred to somewhat inaccurately throughout the record as a "dead end."

Harold had lived in Ringsted about sixteen years. Leonard had lived there only three or four months but prior to moving there had lived "near Armstrong some ten miles north of Ringsted." Plaintiffs argue: "There can be little question that [he] had lived in that vicinity for many years and * * * had been in the area of the accident many times."

The boys had known each other "about five years." Defendant Leonard (as a witness for plaintiffs) says: "I have been out in that country. I don't know which road. I have been in that area several times"; and on cross-examination: "I was not completely sure which road we were on. I thought I was on the road that went straight through to Graettinger but I was not absolutely sure. That road goes straight through and has no dead end. I was not entirely familiar with the roads around there."

Harold testifies on direct examination: "I was not familiar with the road we were on after we turned west. * * * I was not sure whether we were on the right road and I asked Leonard, 'Leonard, are you sure we are on the right road?' He looked at me and kind of smiled and said, 'Well, if we aren't on the right road there is a dead end up ahead.' Shortly after that he looked up and said, 'Dead end!' After he made that remark he did not make any attempt to stop, just kept right on at the same speed. I do not recall who saw the dead end first. As we hit the dead end we swung a little bit to the left just before we went off. * * * We went straight across the [north-and-south] highway and

then swung left as we went into the ditch and on into the field beyond."

On redirect he also says: "After we left Ringsted and before reaching the scene of the accident, we did stop at the Cliff Mellon corner. Leonard was going to turn the corner and I asked him, 'Are you sure this is the right road?' And he said 'I am pretty sure this is the road,' and I said, 'I always thought it was the other mile down, the Graettinger road, because there was a stop sign there.' And he said, 'No, I think this is the road', and he turned. We stopped at that intersection just before entering the road where the dead end was."

Defendants offered no testimony. After all parties rested the trial court sustained defendants' motion for directed verdict and plaintiffs appeal.

Plaintiffs argue: (1) That "defendant driver knew the chances were 50-50 that he was approaching a dead end"; (2) that disregarding such knowledge he continued driving at such speed under existing conditions that an accident could not be avoided if the car was approaching a dead end; and (3) that such conduct presented a jury question on the issue of recklessness.

I. Our statute permits recovery by a guest for damages resulting from "reckless operation" of the vehicle, in lieu of his former common-law right based on mere negligence. Section 321.494, Code 1950, 1954. Many pages have been written to distinguish between recklessness and negligence. The definition of the word "reckless" in Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46, 54, has been the starting point of practically every later attempt to put into words the meaning of the statute.

After an exhaustive discussion of the cases the opinion in that case concludes: "In light of the circumstances under which [the statute] was passed, it is apparent, we think, that the legislature intended the word 'reckless' therein to mean 'proceeding without heed of or concern for consequences.' To be 'reckless', one must be more than 'negligent.'"

It points out that the term may or may not include "wilfulness" or "wantonness" but that in any event the conduct must be "more than negligent" and must indicate "no care, coupled with disregard for consequences."

It is pertinently said in Olson v. Hodges, 236 Iowa 612,

613, 621, 19 N.W.2d 676, 678, 682, that in cases under this statute "there is no profit in the dissection of precedents." The opinion in that case, after stating the definition of "reckless operation" as above quoted from the Siesseger case, says: "In its subsequent decisions the court has not departed from that definition but rather it has fortified and emphasized it for the protection of the driver. Under our decisions reckless operation of a motor vehicle is not inadvertence, momentary thoughtlessness, error in judgment, careless conduct, or negligence. Neither is it a degree of negligence."

We have repeatedly said, expressly or in effect, that the statute requires "a substantial distinction between negligence and reckless operation" and a recognition that recklessness is negligence "plus other elements which raise it to the dignity of recklessness." · Shenkle v. Mains, 216 Iowa 1324, 1328, 247 N.W. 635, 636; Brown v. Martin, 216 Iowa 1272, 1277, 248 N.W. 368; Stanbery v. Johnson, 218 Iowa 160, 165, 254 N.W. 303, 306; Harvey v. Clark, 232 Iowa 729, 732, 6 N.W.2d 144, 143 A. L. R. 1141.

We find no case cited by plaintiffs that disagrees with the basic definition stated in the cases cited above.

II. Appellants start with the major premise that "defendant driver knew the chances were 50-50 that he was approaching a dead end." Elaborating, they compare the driver to one who plays the game of Russian roulette "where one cartridge is placed in a revolver, the cylinder spun, and the gun then placed to the head and the trigger pulled. The player has only one chance in six of being injured.

"If this court would hold the player of Russian roulette to be reckless, then it certainly is bound to hold the defendant driver in the instant case reckless for the defendant driver had, not one chance in six, but one chance in two, of being injured or causing injury."

The argument is unsound. The "50-50 chance" argument that they were headed for a dead end might possibly in a loose sense be conceded. But it is not accurate. In reality there were not two chances. The *fact* existed. They were on the wrong road and in fact approaching a T intersection.

In Russian roulette the result does depend on chance—the fortuitous co-ordination of certain events that are undetermined

when the play begins. If the revolving chamber has six compartments, only one loaded, the odds are one to six the hammer falls on the one cartridge as the cylinder spins. It is a gamble the player takes about which he can do nothing if the play goes against him.

Here the real unknown element was whether the car, as being driven and under the known conditions, could be stopped or safely turned at the intersection. There was involved, not a gamble, but a question of judgment.

III. Plaintiffs' next proposition is that disregarding "such knowledge of danger" Leonard "continued driving at such a speed under the conditions * * * that an accident could not .be avoided if the car was approaching a dead end."

The difficulty here is the lack of proof of this sweeping generalization. The record shows an opinion the speed was "approximately fifty miles per hour." The road was gravel, it was raining, "awfully dark", and visibility poor.

But this is not evidence the driver knew "an accident could not be avoided if the car was approaching a dead end." The sequel shows an accident was *not* avoided. But it is not sufficient to charge the driver was reckless in thinking he was on the right road and in driving accordingly; or even in thinking he was driving safely if the sequel should prove he was approaching the T intersection.

There is too great a lack of evidence here to permit submission of the issue of recklessness. There is no showing as to the condition of the road except that it was gravel; the condition of the car lights and brakes is not shown, nor what lookout was maintained nor any evidence that would warrant a reasonable finding as to the distance within which the car could be stopped or as to whether the corner could be turned when the intersection was reached.

IV. The sequel here shows the car was not stopped nor an accident avoided. But a verdict of recklessness may not be predicated upon the happening of the accident. Duncan v. Lowe, 221 Iowa 1278, 1281, 1282, 268 N.W. 10; Neessen v. Armstrong, 213 Iowa 378, 384, 239 N.W. 56, cited in Shenkle v. Mains, 216 Iowa 1324, 1329, 247 N.W. 635; Wion v. Hayes, 220 Iowa 156, 163, 261 N.W. 531.

In the Shenkle v. Mains case, supra, at page 1328 of 216 Iowa, it is said: " 'Reckless operation', as a ground of recovery, cannot be very satisfactorily defined in hard and fast terms. Nevertheless it may be readily recognized in the concrete case. In the Siesseger case, we held that it devolves upon the court to recognize it when the material facts are not in conflict. This means that we may not cast upon the jury our duty to say in any [given] case whether the evidence discloses a case of reckless operation as distinguished from negligence."

In other words, "the evidence must disclose something from which recklessness could be legitimately inferred." Wilde v. Griffel, 214 Iowa 1177, 1180, 243 N.W. 159, 160. We do not find such evidence here.

V. There is not here the usual indication of fear and uneasiness on the part of the guest. It is significant he was not in the least disturbed by the manner in which Leonard was driving or by the fear they might be unable to stop or turn if they came to the end of the road: "There wasn't anything about his driving on that evening that alarmed me at all before the accident; I didn't have occasion to remonstrate or protest or warn him at all; * * *. As far as I noticed there was nothing unusual or alarming about the manner in which he drove. There was no occasion, as far as I saw it, to raise any objections or warning or anything like that about the manner of driving."

Neither the driver who *thought* they were on the right road, nor the guest who *feared* they were not, anticipated any danger from inability (because of the manner of driving or the conditions existing) to stop or turn if they came to the T intersection. They were presumably sitting side by side and certainly they had equal opportunity to appraise the situation. They were the only eyewitnesses. There was no protest, no demand to drive more slowly, no expression of fear, by the guest. Had the case been submitted, the jury would have been asked to infer recklessness when the guest himself says "there was nothing unusual or alarming about the manner in which he drove."

We think the trial court correctly refused such submission. The decision must be affirmed.—Affirmed.

All JUSTICES concur.