Louis Nesci, appellant, v. Norris Willey, Andrew Murphy & Son, Inc., a corporation, and John A. Schroder, appellees.

No. 48882.

(Reported in 75 N.W.2d 257)

MARCH 6, 1956.

Warren C. Schrempp, of Omaha, Nebraska, and Richard F. Stageman, of Council Bluffs, for appellant.

Ross, Johnson, Northrop, Stuart & Tinley, of Council Bluffs, for Norris Willey and Andrew Murphy & Son, Inc., appellees.

Peterson, Smith, Peterson, Beckman & Willson, of Council Bluffs, for John A. Schroder, appellee.

LARSON, C. J.—Sunday evening, August 24, 1952, was clear and pleasant and the highways were firm and dry approximately two miles east of the "South Omaha bridge" in Pottawattamie County, Iowa, but according to the record it was a bad day for good Samaritans. The plaintiff was driving his car easterly on Highway 275, taking a lady acquaintance to Council Bluffs, when he ran out of gasoline. He was just a short distance east of a right-angle intersection between a dirt road extending north and south and Highway 275, which runs in an east-west direction. As he and his passenger started to walk to a gas station about four blocks toward the east, defendant Willey, driving a DeSoto automobile owned by his employer, Andrew Murphy & Son, Inc., stopped and offered plaintiff and his companion a lift. Willey was accompanied by his wife and four small children and was out for a ride before going to a near-by drive-in theater. After plaintiff procured some gasoline, defendant Willey took them back toward the west, passed plaintiff's car, and in attempting to turn around at the aforementioned dirt-road intersection, was struck by a car owned and operated by defendant Schroder, then being driven easterly on Highway 275.

Plaintiff's action at law against defendant Willey and the car owner, Andrew Murphy & Son, was brought under section 321.494, Code of Iowa, 1954, otherwise known as the "guest statute", claiming the collision was caused by the reckless operation of the automobile by Willey, and also claiming that defendant Schroder was negligent in the operation of his car which, jointly and concurrently with defendant Willey's reckless operation of his vehicle, was the proximate cause of the collision and the sole cause of his injury.

In directing a verdict for defendants Willey and Murphy & Son at the close of all testimony, the court ruled that the evidence was insufficient to prove recklessness. As to these defendants, that ruling presents the only question for us to consider.

In directing a verdict for defendant Schroder at the close of all testimony, the court ruled that the evidence was insufficient to carry plaintiff's burden to show any of the claimed specifications of negligence. This ruling we are also asked to review.

I. First we consider the cause stated against defendants-appellees Willey and Murphy & Son. In their pleadings appellees admit a guest-host relationship between appellant and themselves and concede that appellee Andrew Murphy & Son would be liable for the acts of Willey in operating its automobile. Appellant concedes in his brief and argument that the only substantial issue presented by this appeal, so far as these defendants are concerned, is whether the evidence adduced at the trial, when viewed in the light most favorable to plaintiff, establishes a jury question as to recklessness on the part of these appellees.

We are not disposed again to go into the many able opinions handed down by this court on what constitutes recklessness under the Iowa law. We have discussed this statute and construed it many times since Siesseger v. Puth, 213 Iowa 164, 239 N.W. 46, the latest cases being Harvey v. Clark, 232 Iowa 729, 6 N.W.2d 144, 143 A. L. R. 1141; Olson v. Hodges, 236 Iowa 612, 19 N.W.2d 676; Schneider v. Parish, 242 Iowa 1147, 49 N.W.2d 535; Christensen v. Sheldon, 245 Iowa 674, 63 N.W.2d 892; Goetsch v. Matheson, 246 Iowa 800, 68 N.W.2d 77. In the case of Olson v. Hodges, supra, at page 621 of 236 Iowa, page 681 of 19 N.W.2d, Judge Bliss reviews our prior decisions on that issue and says in all such cases the issue before us is whether there was sufficient evidence of defendant's operation of the car to establish a prima-facie case of "recklessness", citing Welch v. Minkel, 215 Iowa 848, 853, 246 N.W. 775. The answer, he said, "must be reached by consideration of the evidence, the statute, and our decisions construing it."

To constitute recklessness under the guest statute, conduct must be more than negligent and must manifest a heedless disregard for or indifference to the consequences or the rights or safety of others. It, of course, need not involve moral turpitude or wanton and willful misconduct. Harvey v. Clark, supra. There must be an awareness, actual or constructive, of the unusual danger presented by the circumstances, and also a mani-

festation of "no care." Schneider v. Parish, supra. We have frequently and consistently held that conduct arising from mere inadvertence, thoughtlessness or error in judgment is not reckless. Harvey v. Clark, Olson v. Hodges and Schneider v. Parish, all supra, and cases cited therein.

Appellant relies principally upon his own testimony, and of course the rule is so well recognized that it requires no citation of authority that, in passing upon a defendant's motion for a directed verdict, all of plaintiff's evidence must be accepted as true in the light most favorable to plaintiff. It should also be given the strongest inferences reasonably deducible therefrom. White v. Center, 218 Iowa 1027, 254 N.W. 90. Plaintiff testified that after leaving the gas station, defendant Willey *turned left on the highway* and traveled west. He said: "When we went back * * * past my car, I told him that he could let me off across from my car and he told me that he would go down and turn around and * * * he proceeded down the highway", to the intersecting dirt road. "As Mr. Willey approached the intersection of this dirt road on the curve (described as a long curve) he pulled off to the right of the highway and pulled over as close to the post as he could." Plaintiff further stated defendant Willey did not stop before turning left and re-entering the highway, but that he started to make a U-turn. On cross-examination he said: "Prior to the accident, Mr. Willey had been driving on his own side of the highway at a normal rate of speed." When Willey turned the car toward the edge of the pavement plaintiff could see down the highway to the west "about a quarter of a mile." He saw the approaching automobile of defendant Schroder "about a block away." He said: "I continued to watch the Schroder car" as "the Willey car continued to move out on the highway" at five miles per hour. Willey's car, plaintiff said, was about halfway out on the highway when he "hollered, 'Look out.'" Schroder's car was then "a half block away. * * * it did not slow down", and as Willey's car kept on going across the highway it was struck at the right front door, swinging the Willey car around facing west just off the south side of the paving. The Schroder car stopped on the highway facing east about twenty feet east of the Willey car. Just before the impact

plaintiff turned his back to the door and covered his face. On redirect examination plaintiff said: "I hollered just as soon as I realized there was some danger." On cross-examination he said: "I hollered because I saw the car coming. It was not then 15 feet away. I hollered to warn the driver of an impending accident." Plaintiff also testified the highway paving at that point was about 18 feet wide, Willey's car was 17 or 18 feet long, and that Highway 275 is higher on the north than on the south, it being on a long elevated curve; that there was much heavy traffic consisting of passenger cars and stock trucks going to and from Omaha on Highway 275 at that time. The collision occurred about 7 p. m. and, though it was still daylight, it was fast approaching dusk. Plaintiff further denied he gave a statement to an Omaha lawyer that he did not see the Schroder car before the collision, or that Willey had stopped prior to re-entering the paved portion of Highway 275 from the north.

The trial court denied defendants' motion for a directed verdict at the close of this testimony, explaining it was done so that plaintiff might have the benefit of any other evidence tending to support his allegations. However, defendants' testimony was that Mr. Willey had pulled off the highway on the north side of the intersection and stopped before swinging around to the south for a crossing of Highway 275. Willey testified he stopped and straightened the car around facing south, intending to cross to the south side of the intersection, turn around on the dirt road, and re-enter Highway 275 by making a right turn. The physical evidence of the result of the impact seems to substantiate that position, for his car was not hit from behind, pushed to the east, or thrown into the north line of traffic. It was pushed around facing west almost entirely off the highway on the south side. Defendant testified he stopped before entering the highway, permitting traffic to go by before trying to negotiate the crossing. He denied trying to make a U-turn and said he failed to see defendant Schroder's car until just before the impact, when he tried to speed up and get clear. This story was substantiated by his wife and by the Schroders. Willey denied any warning by anyone before the collision, but said there were some outcries afterward. In the front seat, with Willey and his wife,

was one child. In the back seat the plaintiff sat on the right side, the lady with him on the left, and three children between them. In Schroder's car were the defendant Schroder, his wife and child. His testimony was that when he saw defendant Willey pull off the highway he slowed down, and when he saw him stop he resumed his normal speed of 40 to 45 miles per hour, which was the general speed of traffic at that time on that highway. He said traffic interfered after his first view of Willey's car some 100 yards away, and the next time he saw the car it was over the centerline crossing to the south. He was then less than 50 yards away and, although only going 30 miles per hour, he could not get stopped in time. All agree it was still daylight although the sun had gone down, and shortly thereafter cars had their lights on. Defendant Schroder said his dimmers were on, but traffic could be observed without lights. His car was a grayish-green color.

█ As we said in the cases of Harvey v. Clark and Schneider v. Parish, both supra, the question here presented is: Is a jury question of recklessness generated merely from proof that an automobile, while attempting to make a U-turn, is driven onto the traveled portion of a highway without stopping, resulting in a collision, when the driver failed to see an approaching automobile on his right? We agree with the trial court that these facts may tend to prove negligence, but not recklessness, as defined by our statute and previous court decisions.

█ Whether the evidence generated a jury question as to the alleged reckless operation of the Willey car depends upon the conclusions to be drawn from all the facts, circumstances and surroundings shown in the record. Olson v. Hodges, supra.

Undoubtedly there is a point where, because of attendant circumstances, minds of reasonable persons would differ and a jury question would arise. Certainly when one drives his car into a situation where danger is apparent, with a disregard for the almost inevitable consequence, such a question may be generated. Claussen v. Estate of Johnson, 224 Iowa 990, 998, 278 N.W. 297.

█ The attitude of the driver, of course, is important. Was there an attitude of indifference as to the consequences and the

rights of his passengers? Was there or should there have been knowledge of danger? As the Iowa guest statute denies recovery to a guest in such an accident unless the car is operated recklessly, we have often pointed out that such exception to the prohibition must be strictly construed, and unless more than a breach of due care appears by substantial evidence, no jury consideration is permitted. We are firmly so committed by the decisions in Olson v. Hodges, Harvey v. Clark and Schneider v. Parish, all supra, and many others. See also Russell v. Turner, 56 F. Supp. 455. What was meant by "much heavy traffic?" No one seemed aware of any danger due to the manner of operation of Willey's car, and even plaintiff did not complain or sound a warning until "I realized there was some danger" just before the collision.

We conclude from the entire record there was nothing in defendant Willey's operation of the car which indicated he or anyone else was aware of immediate danger under the existing circumstances. Danger on the highway is a relative term, of course, for we must recognize today there is danger for anyone to operate a car upon any highway, but by danger we mean here a sense of impending injury or damage to one's person or property generated by the existing circumstances. We fail to find anything about Willey's driving up to the time of the collision which indicated he was *proceeding without heed of or concern for the consequences, with no care, with utter indifference to the safety of his guest, an entire disregard of existing and apparent danger.* A finding here of recklessness on the part of Willey would then necessarily be based largely on speculation and conjecture, and plaintiff has failed to meet his burden.

Defendant Willey had with him his wife and family, drove at a normal rate of speed to and from the gas station, showed due regard for the flow of traffic by getting off the highway at a place where he could turn and see traffic coming from both directions before starting or proceeding to cross the highway, traversing it slowly at five miles per hour, and his only failure was to see a grayish-green car approaching on his right. Although it was within a block of the intersection, this failure to see the approaching automobile, we think, under the existing circum-

stances could amount to no more than negligent operation. It would not under the circumstances here disclosed establish a prima-facie case of recklessness.

■ Appellant contends the circumstances disclose gross negligence and cites cases from other jurisdictions dealing with such negligence, but we have long since disposed of that contention stating that recklessness, under section 321.494, is more than negligence in any degree. It is quite a different thing. It is more than inadvertence, momentary thoughtlessness, error in judgment, or careless conduct. It implies no care, coupled with a disregard of consequences from an existing or apparent danger. See Brown v. Martin, 216 Iowa 1272, 248 N.W. 368; Siesseger v. Puth, Olson v. Hodges and Schneider v. Parish, all supra, and cases cited therein.

■■ II. Plaintiff further complains that the trial court, in ruling on defendants' motion for a directed verdict, did not comply with Rules of Civil Procedure No. 118, for it did not rule on each assigned ground separately. Clearly the trial court's ruling was directed to those grounds alleging plaintiff had failed to establish a prima-facie case of recklessness as provided by statute and the decisions of this court. In effect, the court denied all others. The purpose of rule 118, R. C. P., insofar as it applies to motions for directed verdict, is to enable the parties litigant to know the ground sustained by the trial court as well as to limit the issue on appeal to this court. 1 Cook, Iowa Rules of Civil Procedure, Rev. Ed., page 752. We too need to know the specific error complained of and cannot guess on the intended grounds sustained in disposing of an appeal. While technically the trial court did not pass on each ground specified in defendants' motion, the basis of its ruling is clear and the issue not obscure either to plaintiff's counsel or to us. We find no reversible error in this assignment. Appellant having failed to establish that appellee Willey was reckless as required by section 321.494, the trial court was correct in directing a verdict in favor of defendants Willey and Andrew Murphy & Son.

■ III. Plaintiff further contends the trial court erred in finding that there was (1) insufficient evidence to disclose any of the alleged specifications of negligence against defendant

Schroder in the operation of his automobile, and (2) that plaintiff had failed to establish by any competent evidence that the proximate cause of the collision and of the injuries sustained by plaintiff were the joint and concurrent negligence of defendant John A. Schroder and the recklessness of the defendant Norris Willey. We are unable to determine from the ruling of the learned trial court on the defendant Schroder's motion to direct, whether or not both of these grounds were sustained. This appears to violate both the letter and spirit of R. C. P. 118 hereinbefore discussed. The trial court stated: "The court finds that there has been no sufficient carrying of the burden to show any of the claimed specifications of negligence as against the defendant Schroder in his operation of the car." If we assume, therefore, that the second ground above set out was overruled, we are still unable to agree with the trial court that there was no substantial evidence of defendant Schroder's negligence. The plaintiff's specifications of negligence were as follows:

"(a) In operating and driving his automobile at an excessive and dangerous rate of speed.

"(b) In failing to have a proper lookout on the road ahead.

"(c) In not operating and driving his car in a careful and prudent manner.

"(d) In failing to keep his said automobile under such control as would allow him to stop within the assured clear distance ahead.

"(e) In failing to stop his said automobile after discovering the peril of this plaintiff.

"(f) In that he failed to keep his said automobile under proper control, but because of his negligence he permitted his said automobile to be violently propelled against the right side of the automobile operated by Norris Willey in which plaintiff was then riding, smashing and breaking the said automobile and causing or contributing to the injuries of which plaintiff herein complains."

It must be recalled plaintiff testified that he observed defendant Schroder's car approaching a block away from the point of impact; that he watched him and he did not slow down.

He said: "The Schroder car kept coming on at the same speed, it did not vary its course." Then too defendant Schroder testified that he slowed down from 40 to 45 miles per hour to 30 miles per hour when he saw defendant Willey pull off the pavement. He also testified that though his view was blocked by traffic going west, he again resumed his normal speed and was not prepared for the situation when he found the Willey car pulling across his lane of traffic. He was then less than 50 yards from the Willey car traveling "about 30 miles an hour", but could not get stopped before the collision.

Viewing the evidence introduced here in a light most favorable to the plaintiff and giving it the strongest inferences reasonably deducible therefrom, we cannot agree that there was insufficient evidence to generate a jury question as to the negligence of defendant Schroder. "Negligence" is want of ordinary care under the circumstances, and "ordinary care" means such care as an ordinarily prudent person would exercise. Mescher v. Brogan, 223 Iowa 573, 272 N.W. 645. We believe there was substantial evidence that defendant Schroder did not exercise such ordinary care under the circumstances. We, therefore, hold under the circumstances herein disclosed plaintiff did establish a prima-facie case of negligence against defendant Schroder, did introduce substantial evidence of the specified grounds of negligence, and that the court was in error in directing a verdict as to this defendant.

We conclude, as to defendants Willey and Andrew Murphy & Son, Inc., the judgment of the trial court must be and is affirmed, but as to defendant Schroder the matter is reversed and remanded for a new trial. Costs shall be taxed two thirds to plaintiff-appellant and one third to defendant-appellee Schroder.—Affirmed in part and reversed in part.

BLISS, GARFIELD, OLIVER, WENNERSTRUM, SMITH, HAYS, and THOMPSON, JJ., concur.

PETERSON, J., takes no part.