HENRY GOODMAN, administrator, appellant, v. LYLE GONSE, appellee.

No. 48883.

(Reported in 76 N.W.2d 873)

<div style="background:black"> </div>

MAY 9 , 1956.

REHEARING DENIED SEPTEMBER 24, 1956.

Smedal, Maurer & Seiser, of Ames, for appellant,

Robert E. Killmar and W. W. Reynoldson, both of Osceola, for appellee.

LARSON, C. J.—On the morning of May 30, 1952, Lyle Gonse with his two nieces, his landlady, plaintiff's decedent Dorothy Ann Bowlin, 80, and her daughter Mrs. Poague, 59, left St. Joseph, Missouri, for plaintiff's home in Melbourne, Iowa. He was driving his 1942 Buick four-door sedan headed up U. S. Highway No. 69 about a mile south of Osceola, Iowa, when the accident occurred of which plaintiff complains and which allegedly caused the death of Mrs. Bowlin.

From the testimony these facts appear without serious dispute. The mishap occurred sometime before 11 a. m. The defendant was driving between 40 and 50 miles per hour. The pavement was dry and smooth. However, a stretch of pavement extending about ten miles south of Osceola was being improved by the addition of approximately four inches of asphaltic cement commonly called "blacktop." On this date the blacktop had been completed across the entire width of the pavement from Osceola for about three miles, and from there on south it was in the process of being laid by layers, one half the width at a time. At the south entrance to this stretch there was a caution sign stating "this road is kept open for your convenience", and flagmen were on duty in the vicinity of the machinery when work was in progress to keep traffic moving one way at a time. While the surface of the paving at the point of this accident was finished and no machinery was in that area, the shoulders had not been brought up to the level of the paving, so that there was a drop-off on the east side of some three to five inches.

From a point about a mile and two tenths south of the Osceola city limits the highway begins a long, descending slope on which there is a flat left curve. (See plaintiff's Exhibit 9.) It then continues downhill toward the north for some three or four hundred feet. At the time defendant's car was rounding this curve in his right-hand lane it appears the right rear wheel of his vehicle slipped off the edge of the blacktop onto the dirt shoulder, and in his attempt to bring it back on the paving defendant lost control of the automobile. It angled on a slightly curved line across the pavement about 125 feet into a bank on

the opposite side of the highway, rolled over, and came to rest on the pavement upside down headed eastward. Decedent was thrown from the front seat and severely injured.

Plaintiff produced testimony that shortly prior to the accident Mrs. Poague, riding in the back seat, had accused defendant of "driving too fast", and that defendant had said: "Shut your mouth, I don't like back seat drivers, you can get up here and drive." No testimony appears as to any change of speed thereafter, nor is there any evidence as to the speed defendant was driving at the time of this conversation.

The trial court sustained defendant's objection to proffered testimony of Highway Patrolman Jones that he heard another of the passengers say to defendant after the accident: "I told you you were driving too fast, why didn't you slow down", and that defendant replied: "I know I was", for the reason that "the information given * * * by the defendant in the presence and hearing of the patrol officer * * * is and was privileged under the statute * * *."

At the close of plaintiff's case the trial court sustained defendant's motion to direct a verdict in his favor, upon the ground that plaintiff had failed to show by substantial evidence that the question of defendant's recklessness should be submitted to the jury. From judgment in favor of defendant, plaintiff appeals, assigning as error the court's exclusion of the testimony of the patrolman and its action in sustaining defendant's motion for a directed verdict.

Plaintiff contends the facts and circumstances disclosed by the evidence show substantially that defendant was "proceeding without heed of or concern for consequences", with "no care", "with utter indifference to the safety of his guests, and entire disregard of existing and apparent danger." In this contention he points to the following: that the defendant suffered a physical impairment, having had his left arm amputated below the elbow some years previous; that the fact was obvious that the road was being improved or repaired with unfinished shoulders; that there were warning signs along the road to proceed with caution; that the highway at that place was a long hill and curve with only an 18-foot surface; that the defendant was driving between 40 and 50 miles per hour, which was excessive under the circumstances; that two of his guests had protested as to his speed; and that at the place where the right wheel of defendant's car had gone off the blacktop there was a drop of about four inches.

Defendant, on the other hand, contends it clearly appears that the 18-foot surface at this point was dry, clear and smooth; that vision was not impaired; and, while the curve was long and flat, it was shown to be somewhat deceiving to one coming from the south. A patrolman testified that over some period of time drivers had had a tendency to misjudge that flatness and override the pavement, which later made necessary the widening of the hard surface around the curve some 18 inches in order to stop traffic from chipping off the blacktop cement on the paving proper. Defendant contends that this was a condition not readily apparent to one approaching from the south; that it was not shown that 40 to 50 miles per hour was too fast for that curve; that there were no marks observed or testimony given that defendant's automobile had swerved or skidded even slightly prior to that time; and that there was no evidence of loss of control of the vehicle prior to defendant's effort to get it back on the resurfaced highway, nor that this pavement presented any unusual negotiating hazards known or apparent to the defendant.

For the purpose of this discussion we shall include as acceptable the proffered testimony of Patrolman Jones.

I. There is no dispute that plaintiff's claim is bottomed on section 321.494 of the 1954 Code of Iowa, commonly known as the "guest statute." This statute and its interpretation have been before this court many times and, while the general rule has been clearly stated, the application thereof has been sometimes difficult. We said in Schneider v. Parish, 242 Iowa 1147, 49 N.W.2d 535, that it is cold comfort for a lawyer, or a trial judge who finds himself involved with this statute, to be told that each case must depend upon a proper interpretation of the law as applied to the particular facts before him, but certainly no hard and fast rule which will apply to all situations can be devised. However, this court has never departed from the definition of "reckless operation" set forth in Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46, 54, and it has been the starting point of practically every later attempt to put into words the meaning of that statute. Goetsch v. Matheson, 246 Iowa 800, 68 N.W.2d 77; Nesci v. Willey, 247 Iowa 621, 75 N.W.2d 257.

In Olson v. Hodges, 236 Iowa 612, 622, 19 N.W.2d 676, 682,

we reviewed previous applications by the court and, in an attempt to further clarify the law, quoted from Shenkle v. Mains, 216 Iowa 1324, 1328, 247 N.W. 635, 636, as follows:

"The statute calls imperatively upon us to recognize a substantial distinction between negligence and reckless operation. * * * Having laid down in the Siesseger case * * * the line of demarcation to the best of our ability, our remaining duty for the future is to apply the rule without vacillation to the concrete facts of the particular case. * * * The two grounds upon which recovery may be predicated * * * are exceptional and not general. The general rule is that a guest cannot recover. The exceptional grounds are: (1) 'intoxication' of the driver, (2) 'reckless operation' by the driver. * * * If the application of the exceptions becomes more frequent than that of the general rule, it may well be deemed a warning sign that we are misapplying the exceptions."

We are unable to say it better at this time.

II. Recklessness is an inference of fact to be drawn from the evidence offered and is a matter for the determination of a jury if the facts disclosed can reasonably be said to support such an inference. However, facts disclosed which can support a finding of recklessness only through speculation and conjecture must not be submitted for jury determination. It is the court's duty to first pass upon the question as to whether or not the facts disclosed by the evidence, plus the reasonable inferences that could be drawn therefrom, would support such a finding of recklessness. Mescher v. Brogan, 223 Iowa 573, 272 N.W. 645. The evidence must disclose something from which recklessness could be legitimately inferred. Wilde v. Griffel, 214 Iowa 1177, 243 N.W. 159; Wright v. What Cheer Clay Prod. Co., 221 Iowa 1292, 267 N.W. 92. It is the general rule in this state that in matters of proof, a litigant is not justified in inferring a fact as proven from mere possibility of existence of facts. Phillips v. Briggs, 215 Iowa 461, 465, 245 N.W. 720.

The plaintiff is, of course, entitled to have the benefit of all favorable inferences which reasonably may be drawn from the evidence. Russell v. Turner, 56 F. Supp. 455; Hebert v. Allen, 241 Iowa 684, 41 N.W.2d 240; Baker v. Langan, 165

Iowa 346, 359, 145 N.W. 513, 518; Thompson v. Cudahy Packing Co., 171 Iowa 579, 581, 151 N.W. 470, 471; Comfort v. Continental Casualty Co., 239 Iowa 1206, 1208, 34 N.W.2d 588, 589. However, against that rule thus variously stated, we must balance the fact that the burden is on the plaintiff to prove defendant's recklessness.

We said in Mescher v. Brogan, supra, 223 Iowa 573, 581, 272 N.W. 645, 650: "It is the actions and conduct * * * that measure the degree of care and determine whether or not one is proceeding * * * with a heedless disregard for * * * the rights of others." In other words, the evidence must show some act or acts utterly inconsistent with prudence or proper regard for the safety of the guest in his car, from which the inference could be drawn that the operation of the vehicle was reckless. Wilde v. Griffel, supra.

Here, as in the Hebert v. Allen case, supra, plaintiff must rely upon his evidence for an inference of indifference in the mental attitude of defendant at the time and place of the accident—an attitude amounting to a disregard for the safety of his passengers. We agree with the trial court in failing to find the record evidence supports such an inference.

It is true defendant admitted after the accident that he had been going too fast, but such statement of realization after the accident is not to be taken as an admission that he knew or realized the error before the accident. It was not a confession. His statement that he knew he had been driving too fast cannot be reasonably elevated to an admission that he was proceeding with utter disregard for the safety of his passengers. Such statement alone is insufficient evidence upon which to base a fair or permissible inference of recklessness.

III. Plaintiff's principal reliance must therefore be placed upon evidence introduced to prove the allegation of unreasonable speed under the circumstances. The testimony as to excessive speed under existing conditions is not at all impressive or convincing. We have frequently held that it is not conclusive of excessive speed that one or more guests protested, preferring to place decision on other disclosed facts and circumstances to determine that fact. Olson v. Hodges, supra; Mayer v. Sheetz,

223 Iowa 582, 273 N.W. 138. Such factors as the width, surface and condition of the highway, and the vehicle, the weather, the visibility and other apparent hazards of travel at that time and place must be considered. The record here discloses nothing to indicate that the traveled portion of the highway itself offered any hazard. On the contrary, the smooth, newly finished black-top was dry and solid. Visibility was good. There was no accounting for the fact that the right rear wheel of defendant's car slipped over the side of the raised surface of the pavement unless it was the peculiar flatness which one witness stated appeared to mislead many drivers in that lane into making the same mistake. To that extent it was a "dangerous" curve, but it does not appear that defendant knew of this fact or could reasonably be charged with such knowledge.

In a very recent case, under a similar situation, we said in Goetsch v. Matheson, supra, at page 805 of 246 Iowa, page 80 of 68 N.W.2d, that knowledge of a possible hazard ahead, while driving at " 'approximately fifty miles per hour' " on a gravel road, when it was raining, " 'awfully dark' ", and visibility poor, was "not evidence", direct or by inference, that the driver knew " 'an accident could not be avoided if the car was approaching a dead end.' " We said, "There was involved, not a gamble, but a question of judgment", and held there was too great a lack of evidence to permit submission of the issue of recklessness to the jury. We also said therein that the fact that the car was not stopped or turned in time, nor an accident avoided, was not controlling, for a verdict of recklessness may not be predicated upon the happening of the accident. Also see Duncan v. Lowe, 221 Iowa 1278, 1281, 1282, 268 N.W. 10; Wright v. What Cheer Clay Prod. Co., supra; Shenkle v. Mains, supra, and cases cited therein; Wion v. Hayes, 220 Iowa 156, 163, 261 N.W. 531.

▅▅▅ Here there is no evidence or reasonable inference, we think, that defendant had any substantial reason to believe he could not safely negotiate the approaching curve at the speed he was traveling. We have often said, mere inadvertence, thoughtlessness, error of judgment, or any other negligence not amounting to a heedless disregard for or indifference to consequences is not sufficient to carry a guest-statute case to the jury.

This was the plain statutory intendment and we should not abrogate that law by any construction which would in effect destroy it. Schneider v. Parish, supra; Olson v. Hodges, supra, and cases cited therein.

■ This was an unfortunate accident and resulted in grievous injuries to plaintiff's decedent, but it is well to keep in mind that unless the acts of defendant would have been reckless within the meaning of the law without the resulting injury to plaintiff's decedent, they are not reckless merely because the injuries were sustained. Duncan v. Lowe and Goetsch v. Matheson, both supra. Furthermore, there were no complaints with defendant's operation of his vehicle with the exception of speed. There was no evidence of prior swerves or jolts, no prior running off the paving onto the shoulder, or any alleged willful violation of traffic laws. There was no testimony produced that a speed of 40 to 50 miles an hour was improper on that curve by anyone, including the officers. Most important of all, there was no evidence defendant had any other reason to believe he would have difficulty in staying upon the paved or blacktop portion of that highway, nor that traffic at that time and place was such that it might force him over the edge.

■ IV. It was not seriously contended that defendant lost control of his vehicle until after he tried to get back upon the blacktop. His manner of making this attempt may well have been negligent. But, as previously pointed out, the guest statute calls imperatively upon this court to recognize a substantial distinction between negligence and reckless operation. Shenkle v. Mains, supra, 216 Iowa 1324, 247 N.W. 635. It is insufficient for the plaintiff to show defendant negligent, for it must be remembered that he must go further and show an utter heedless disregard of danger that would be apparent to or reasonably anticipated by a person exercising ordinary prudence and caution under the existing circumstances. Wright v. What Cheer Clay Prod. Co., supra, 221 Iowa 1292, 1299, 267 N.W. 92, 95. We said therein:

"In cases of this kind the jury should not be permitted to determine whether the defendant did what an ordinarily prudent person would have done under the circumstances, or failed to

do what a person of ordinary prudence and care would have done under the same or similar circumstances."

The reason is clear for such is only the rule governing negligence. Perhaps here defendant was negligent, but in viewing all the factual evidence in a light as favorable to plaintiff as is reasonably possible, we must also conclude that it did not warrant a finding of reckless operation within the terms of the statute.

We have considered carefully the principal cases cited by plaintiff and find in each a distinction of note. In Crowell v. Demo, 231 Iowa 228, 1 N.W.2d 93, the defendant was driving 75 miles per hour on a narrow, gravel road after a recent storm. After one swerving of the car, plaintiff asked that defendant be careful, but instead he increased the speed. Later when plaintiff warned of an obstruction in the road ahead, defendant paid no attention and did not try to stop until it was too late. We held the factual evidence disclosed in the defendant's mind an indifference to consequences and a willingness to take a chance, necessary to establish guilt of recklessness.

The same is true in the case of Hebert v. Allen, supra, 241 Iowa 684, 41 N.W.2d 240, where the guest was riding on the running board of the defendant's car. We held the inference was strong that the car was intentionally swerved to frighten the passengers, and resulted in sideswiping a pole which injured the guests. There the circumstances were such that the driver's actions permitted an inference of a willful disregard for the probable consequence. But even in that case this court divided sharply 5 to 4 on the permissibility of such an inference.

Also in the recent case of Hahn v. Strubel, 243 Iowa 438, 52 N.W.2d 28, we find the element of bad temper, a quarrel at the termination of a tavern barroom affair, and speed in excess of the city speed limits, as well as other willful violations of traffic regulations. The car lights were poor, and though a plea for reduced speed was made after a sharp swerve threw defendant's guest into the dash, it was ignored. On the contrary, there was an increase in the speed thereafter. We held such acts of the driver justified an inference of "no care" and provided substantial evidence of recklessness.

In all of these cases there was evidence introduced tending to show acts in addition to speed justifying the inference of reckless operation—acts justifying a complaint by the guests. In all of them there appeared an intentional chance-taking by the operator of the car in the face of apparent and complained-of hazards. Also see Claussen v. Estate of Johnson, 224 Iowa 990, 998, 278 N.W. 297.

In most of the cases where recovery has been permitted there has been substantial evidence introduced that the operator of the vehicle deliberately, voluntarily or heedlessly drove his car into a situation where the danger or peril was clearly known or should have been discovered in the exercise of ordinary care and prudence. White v. Center, 218 Iowa 1027, 254 N.W. 90.

In Fraser v. Brannigan, 228 Iowa 572, 293 N.W. 50; Mescher v. Brogan and White v. Center, both supra, the court felt that the injury was so *probable* it should have been foreseen or anticipated so clearly that the driver's conduct showed "no care" within the meaning of the definition in Siesseger v. Puth, supra. Such conduct is not apparent here, but in following this rule we ask, should defendant have anticipated that a wheel would drop off the blacktop onto the shoulder? Was it so *probable* that its peril or hazard had to be contemplated in traveling that highway, or was it merely a *possibility*? Judge Graven, in Russell v. Turner, supra, 56 F. Supp. 455, at page 462, thinks this a usable yardstick in determining whether the question of recklessness should be submitted to the jury. In other words, if the conditions were such that injury to the guest would be the *probable* result of the operation of the car in the manner shown, the fact question of recklessness would be for the jury, but if the danger of injury was a *possibility* only, the court should direct for the defendant. We referred to this position in Schneider v. Parish, supra.

If we use that yardstick here, we must also conclude that this situation disclosed no more than a possibility of injury. Here the highway was open for travel. The unseen danger due to the peculiar flatness of the curve, which appears as the probable cause of the mishap, could not be charged as a hazard known and ignored by defendant. In any event we are cognizant of and

have followed the rule that in determining whether there was generated a sufficient question to require submission to the jury, the evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the plaintiff. Having done so, we conclude it does not warrant a finding of reckless operation within the terms of the statute in question as interpreted by prior opinions of this court.

■■■ V. We have given full consideration to the proffered testimony of Patrolman Jones for we are of the opinion that his testimony relating to overheard statements of the "next to the youngest" passenger and the defendant was proper under the circumstances disclosed. The patrolman claimed he overheard these statements while he was attempting to remove the injured woman yet in the overturned automobile. It is defendant's contention that such testimony must be excluded under section 321.271, Code of Iowa 1954, citing our holdings in Vandell v. Roewe, 232 Iowa 896, 6 N.W.2d 295; Sprague v. Brodus, 245 Iowa 90, 60 N.W.2d 850; and Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 61 N.W.2d 696. The trial court upheld that contention. The cases cited by defendant clearly hold that, while such an officer is engaged in gathering information for the purpose of making a report to the public safety department of the state, information disclosed to him is privileged under the statute. However, we do not extend such exclusion to things observed by the patrolman, nor should it be extended to statements made in his presence which were not intended as a report or as information given for a report. Unless there is an intention express or implied that the declarant is reporting as required by law, the privilege should not exist. It was not so intended by the statute, which is in the nature of an immunity granted in return for information requested by the state.

■■■ If the declaration were in the classification of res gestae as a spontaneous exclamation, it definitely should not fall within the bar created by the statute, for clearly such exclamations would not be made with any motive or contemplated purpose. See Showalter v. Western Pacific R. Co., 1940, 16 Cal.2d 460, 106 P.2d 895; 40 Iowa Law Review, page 516. In the case at bar there appears no indication that the parties making the

statements in the officer's hearing had any intention of furnishing information to the officer for the purpose of making a report as required by law, nor that the officer was at that time seeking such information, even though he did say he made mental notes of everything for the purpose of later preparing his report.

 It must be concluded, therefore, that unless the circumstances so exist that it is apparent that the declarant is making a report or furnishing information for the purpose of making a report, which he is required by law to make or give, his statement may be admitted, for then it does not come within the privilege provision of the statute. While we hold that the trial court erred in its ruling in respect to the admissibility of this material evidence, yet we hold that the same was without prejudice, for even including the proffered evidence of the officer and considering all the evidence in a light most favorable to the plaintiff, a finding of reckless operation in this matter could not be sustained. The judgment of the trial court must therefore be affirmed.—Affirmed.

BLISS, WENNERSTRUM, SMITH, HAYS, THOMPSON, AND PETERSON, JJ., concur.

GARFIELD AND OLIVER, JJ., dissent.

GARFIELD, J. (dissenting)—I respectfully dissent.

There is substantial evidence defendant, with only one arm, was driving 50 to 60 (not just 40 to 50) miles an hour shortly before this accident, down a hill, around a sharp, dangerous curve, on a road under construction. Two of the four lady passengers protested at his speed. To one of them defendant expressed resentment with the impertinent retort, "Shut your mouth, I don't like back seat drivers, you can get up here and drive." This indicates defendant's indifference to the safety of his passengers.

I would reverse.

OLIVER, J., joins in this dissent.